HENRY D. MOORE ET AL., PLAINTIFFS IN ERROR, v. THE COMMISSIONER OF STREETS OF THE BOROUGH OF HADDONFIELD AND THE WEST JERSEY TRACTION COMPANY ET AL., DEFENDANTS IN ERROR.

Submitted July 11, 1898—Decided November 30, 1898.

A statute (*Gen. Stat.*, *p.* 3239, ¿ 126) authorized borough councils, upon public notice to all parties interested, to grant or to deny to a street railroad *a location* of its tracks conformably to its route, such grant if made to be upon such lawful restrictions as the interest of the public was deemed to require. Upon notice, consent to a location was given upon the restriction (among others) "that the limit of this consent shall be twenty-five years from the acceptance of this ordinance." Subsequently, and *without notice*, a supplement to this ordinance was passed that eliminated the above restriction. *Held*—

1. The municipal act of the "location" of the tracks of a street railroad operated by the trolley system does not involve any private rights.

2. Such location is a legislative and not a judicial act.

3. Apart from express statutory requirement, notice is not requisite.

4. The notice required by the act is satisfied when it has been complied with.

5. Whether the action of council was in bad faith is not a judicial question.

On error to the Supreme Court.

For the plaintiffs in error, *J. Fithian Tatem* and *Herbert A. Drake.*

For the defendants in error, *E. Ambler Armstrong* and *David J. Pancoast.*

The opinion of the court was delivered by

GARRISON, J. The judgment rendered in the Supreme Court is affirmed, for the reasons given in the opinion of Mr. Justice Collins, reported in 32 *Vroom* 470.

In the concluding paragraph of his opinion, the learned justice said : " No public hearing on notice was required as a prerequisite to the changes ordained May 12th, 1897. They come within the general municipal power of regulation."

One of the changes to which reference was thus made was the elimination from the original ordinance of a restriction of its grant imposed after the public hearing and notice prescribed by the statute. Whether without notice this restriction could be eliminated, was held under advisement in this court, and counsel were notified that further briefs upon this point would be received. Upon such further consideration the decision of this court is in full accord with the opinion delivered in the court below, but inasmuch as the matter has been re-argued and is of somewhat general interest, the grounds for the decision will be now more fully stated.

The ordinance under review is "A supplement to an ordinance regulating the railroad of the West Jersey Traction Company." The original ordinance, which was passed upon notice and hearing, contained this clause, " that the limit of this consent shall be twenty-five years from the acceptance of this ordinance."

There were in existence at that time, viz., March 6th, 1895, two general statutes, to either of which the power of council thus to limit its consent might be referred—first, the Traction act of March 14th, 1893 (*Gen. Stat.*, *p.* 3235), and second, the Street Railroad act of May 16th, 1894 (*Gen. Stat.*, *p.* 3247). Each of these statutes required that notice be given, but with

this difference, viz., that by the Traction act of 1893 it was to be given "to all parties interested," whereas, by the Street Railroad act of 1894, it was by "public notice." The reasons for this distinction arose from the nature of the proposed municipal action, which, under the earlier act, was *the location of the tracks* of a street railroad whose route was already established; whereas, under the latter act, it was the grant of the municipal consent to the use of the public streets. In the original ordinance these two purposes seem to have been blended, so that the location was made by the same action by which the consent was given. The twenty-five years' limit may therefore be referred to either act. If to the "location" act of 1893, it was one of "such lawful restrictions as they [council] deem the interests of the public may require;" if to the "consent" act of 1894, it arose from the power of council to withhold its consent altogether. Here, however, the statutes diverge in their bearing upon the litigated point, from the fact that the notice required for "consent" is one concerning a public matter involving action that is purely legislative, whereas the notice to "parties interested" of a proposed location of tracks suggests that the proposed action may be of that mixed quality that has been called "quasi-judicial." This is the pivot upon which the case turns, and not upon the statutory requirement that notice be given. For if the municipal action be one for which, but for the statute, notice was not required, then the statutory requirement extended only to the original ordinance. When complied with, it was satisfied and at an end. If, on the contrary, regardless of the statute, notice was requisite because of the judicial quality of the act, then so long as that quality inheres notice will be a necessary prerequisite to its exercise. In fine, if the statute had been silent as to notice, judicial action would still have required notice, while legislative action would have called for none. This is the footing upon which the case now stands, from which the "consent" given under the act of 1894, which was clearly legislative, may be dropped, leaving the "location" act to be considered to all intents as if the

statute had been silent as to notice  The fact that the supplemental ordinance left the location untouched and dealt with the restriction as to time is not of legal significance, for if, upon principle, the original ordinance was a judicial act, it could not be abrogated, even in part, save upon notice.

The inquiry, therefore, is, whether the action of the council under the statute of 1893 was legislative or judicial.

The difficulties of formulating a universal solvent of this question are rehearsed rather than removed by the opinions that deal with it.  It is therefore to be assumed that the perplexity is inherent in the subject.  *Youngs* v. *Overseers*, 2 *Gr.* 517; *New Jersey Turnpike Co.* v. *Hall*, 2 *Harr.* 337; *Hess* v. *Cole*, 3 *Zab.* 116; *Coster* v. *New Jersey Railroad and Transportation Co.*, *Id.* 227; *Vanatta* v. *Morristown*, 5 *Vroom* 445; *Boice* v. *Plainfield*, 9 *Id.* 95; *Hutton* v. *Camden*, 10 *Id.* 122; *Youngster* v. *Paterson*, 11 *Id.* 244; *Stretch* v. *Hoboken*, 18 *Id.* 268; *Traction Co.* v. *Board of Works*, 27 *Id.* 431; *Kennelly* v. *Jersey City*, 28 *Id.* 293; *Railroad Co.* v. *Cape May*, 29 *Id.* 565; *S. C.*, 31 *Id.* 224.

An examination of these decisions will show that where "person or property" or "personal rights" are clearly involved the rule is plain, but that it perceptibly shades off whenever debatable ground is reached.  I do not see, however, that there is in the present case much ground for debate.  As to all public rights in the street, the municipal action was clearly legislative.  It became judicial only in case it imposed an additional burden upon the land of the abutting owners.  That such has not been held to be the legal effect of ordinances granting to railroads operated by the trolley system the right to lay tracks in the streets will appear from two expressions of opinion by the Chancellor and at least one in the Supreme Court.  *West Jersey Railroad Co.* v. *Camden, Gloucester and Woodbury Railway Co.*, 7 *Dick. Ch. Rep.* 31; *Borden* v. *Atlantic Highlands and Red Bank Railway Co.*, 18 *N. J. L. J.* 305; *Kennelly* v. *Jersey City, supra.*

In the last case cited Mr. Justice Dixon said: "The adop-

tion of the trolley system and the laying of double tracks in the street do not involve private rights."

In *Roebling* v. *Trenton Passenger Railway Co.*, 29 *Vroom* 666, 673, Mr. Justice Depue, delivering the opinion of this court, said : " I agree with those cases in our courts which hold that the substitution of electric motors with the trolley system for horses on street railroads does not, *per se*, create an additional easement."

The broad question touched upon by these opinions is not, however, involved in the decision of the point now before us, which is not the right of the route of the railroad but the mere location of its tracks. The route of the railroad and the proceedings upon which rests its right to be in the streets are not before us. The right of the railroad in this respect must be assumed upon this writ of error. This being so, it would seem to be clear that the location of the tracks in the street was a question that called for legislative action only. It was as purely an act of municipal regulation of the use of the highways as was the consent to the proposed route. The " restriction," which is the immediate subject of review, being of a subsidiary nature can rise no higher than its sources. If the " consent " and the " location " were acts of legislation, the " restriction " was of the same character. The case is, therefore, strictly analogous to that of *Roebling* v. Trenton Passenger Railway Co., above cited, in which this court decided that an ordinance prescribing, under legislative authority, the places in the street where trolley poles should be placed did not create an additional easement upon the lands of the prosecutor and abutting owner. Such action by the municipality was held to be a regulation of the public use and not an infringement of private rights. If the location of poles upon the lands of an abutter be not a private injury, the location of tracks certainly is not.

The passage of the supplemental ordinance in the present case being therefore a regulation of the public use was an act of legislation for which notice was not required. This disposes of the question that was re-argued from the point of view upon which the decision rests.

It remains to say a word upon that view of the case which assumes that it is within the judicial province to protect constituencies from the "recreancy" of their representatives by undoing legislation that evinces "bad faith." To which the answer is—first, that the power so to intervene has wisely been withheld from the judiciary; secondly, that if the power existed, its exercise would be most mischievous, and lastly, that the redress of the betrayed constituent is in his own hands, to be sought at the polls and not in the courts.

*For affirmance*—THE CHANCELLOR, DEPUE, GARRISON, GUMMERE, LUDLOW, ADAMS, HENDRICKSON, NIXON. 8.

*For reversal*—THE CHIEF JUSTICE, LIPPINCOTT, VREDENBURGH. 3.