HARRY S. EHRET

*v.*

THE CAMDEN AND TRENTON RAILWAY COMPANY.

MARY N. BALDWIN

*v.*

THE CAMDEN AND TRENTON RAILWAY COMPANY.

[Filed June 13th, 1900.]

1. The contention that the construction of an electric railway, known as a "trolley," longitudinally upon a country public road, imposes a servitude in addition to that charged upon the lands by the original taking for a public highway, entitling the owner of the fee to additional compensation to be first made, is an unsettled question in this state.

2. When the case presented for a preliminary writ of injunction depends upon the acceptance of the above-stated contention as established, the writ will not be allowed.

On bill and affidavits. Application for a preliminary injunction.

The two bills of complaint in these causes pray for injunctions restraining the defendant company from constructing its electric railway or trolley road along and in Warren street in

Ehret *v.* Camden and Trenton Ry. Co.

the township of Beverly, in the county of Burlington, over the lands in which the complainant, who is an abutting owner, has a fee-simple estate.

Both causes are prosecuted and defended by the same counsel, and, as they involve the same question, have been heard together. Replying affidavits were presented, but were afterwards withdrawn, and the causes have been argued on the bills and affidavits thereto annexed, and orders to show cause, &c., why preliminary injunctions should not issue, &c.

The claim for the allowance of the writ is based upon the complainants' contention that the defendant was incorporated and organized under the Traction Company act (*Gen. Stat. p. 3235*), and is engaged in the construction of an electric railway longitudinally along Warren street, in Beverly township, which they allege is a public highway, or country road, and not a city street. They further allege that they are abutting owners, holding a fee-simple title to the lands over which that public highway runs, on which the railway is about to be constructed by the defendant; that the construction of that railway imposes a servitude upon their lands, in addition to that of a public way; that for this proposed additional taking of their lands they have had no compensation made, and they ask that a preliminary injunction may go, to restrain the laying and construction of the proposed electric railway until compensation be first made, &c.

*Mr. Charles K. Chambers* and *Mr. Mark R. Sooy,* for the complainants.

*Mr. Howard Flanders, Mr. Samuel W. Beldon* and *Mr. David J. Pancoast,* for the defendant.

GREY, V. C. (orally).

The questions presented in these two cases lie within such narrow compass, and have been so fully enlightened by both citation and argument, that they may readily be disposed of at once.

The complainants apply for preliminary injunctions, and

the only matter considered and passed upon is their right to that particular relief.

There is no claim that the complainants are in actual possession of the land proposed to be used for the electric railway, nor that they have any other interest than that of owners of the fee of lands lying within a public highway which is not located in a city.

The complainants in both cases admit that previous decisions in this state have declared that the use of a city street for a horse railway is within the servitude imposed by a taking for a public highway. *Hinchman* v. *Paterson Railway Co., 2 C. E. Gr. 75.* And that the laying and operating of an electric railway upon a city street is within the same public right. *Halsey* v. *Rapid Transit Street Railway Co., 2 Dick. Ch. Rep. 380.* Their contention in the case in hand is that the construction of an electric railway upon a country road stands upon a different basis, because, they say, the servitude originally imposed upon land taken for use as a city street is vitally different from that charged upon lands taken for a country road.

That in a city the density of population, the large number of dwellings, factories and other buildings necessarily require the lighting of the streets, the carrying of passengers to and fro upon them by a rapid transit, and other incidents attending thereon which justify a greater and more varied use of the way. That none of these uses are required on a country road, and that when it is sought to impose them on such public highway, they constitute an additional servitude and taking of the fee-owner's lands, for which he must be first compensated. The cases of *Pennsylvania Railroad Co.* v. *Montgomery County Passenger Railway Co., 167 Pa. St. 62,* and *Zehren* v. *Milwaukee Electric Railway Co. (Wisconsin), 74 N. W. Rep. 541,* are cited as sustaining this proposition.

This contention necessarily involves the assumption that public easements imposed in the laying out of country roads are essentially different in their nature from those charged upon land in taking it for a city street; that only those methods of travel can be used which were in acceptance at the time of the taking, and that the introduction upon a highway taken for use

as a country road, of new modes of travel, substantially different, which might be lawful if exercised on a city street, would be the imposition of a new and additional servitude. The construction of an electric railway upon a country road, the complainants insist, is such an additional servitude, for which compensation must first be made.

No decision of any of the courts of this state is referred to which supports the complainants' contention. Chancellor Williamson, in *Morris and Essex Railroad Co.* v. *Newark, 2 Stock. 357,* declared that it was consistent with the purposes for which public highways were originally designated that the public authorities should "adapt them in their use to the conveniences and improvements of the age." In *Halsey* v. *Rapid Transit Co., 2 Dick. Ch. Rep. 384,* Vice-Chancellor Van Fleet takes the same view, and holds that the landowner's compensation is awarded upon a basis that he is to be perpetually deprived of his land, and that the highway may be used not only in the manner observed when the land was taken, but by such other methods as the improvements of the age and new wants arising out of an increase of population, or an enlargement of business, may from time to time render necessary. It is true that these cases were presented because of alleged intrusions upon city streets, but the subject was by the learned judges treated from the broadest point of view, in discussing the constitutional right of the fee-owner in public highways. The supreme court of this state accepted these and other cases in this court, as establishing the doctrine that the adoption of the trolley system for the conveyance of passengers on city streets is not, *per se,* an invasion of private rights. *Kennelly* v. *Jersey City, 28 Vr. 294,* and cases there cited. The court of errors, in *Roebling* v. *Trenton Railway Co., 29 Vr. 273,* in a unanimous opinion agreed to that proposition. In the same court they were again referred to as expositions of the law without unfavorable comment. *Moore* v. *Haddonfield, 33 Vr. 390.*

On the theory advanced by the complainant, the extent of the servitude imposed by a taking for a public highway must depend upon the question whether the locality in which the highway was taken was at that time in a city or in the country. If

Ehret *v.* Camden and Trenton Ry. Co.

in a city, then the abutting owners' land was charged with the greater servitude, and if in the country, with the lesser. Subsequent change in the nature of the locality could not increase the burden imposed upon the abutter, so that if the lands were originally taken for a country road, the additional changes incident to city use could not be thereafter cast upon them without additional compensation to the owner.

Many important avenues in the most populous cities in the state were originally laid out as country highways  The increase of population and the improvements of the neighborhood have often within a very short space of time developed the country road into a village thoroughfare, a town highway and finally a city street.

If the principle declared in the Pennsylvania and Wisconsin cases above cited controls such a situation, the abutting owners along such former country roads, but present city streets, may claim to be entitled to additional compensation for their use for street railways.

The questions involved in this contention have never been determined in this state, and the present application for a preliminary injunction is clearly within that class which depends upon an unsettled and doubtful proposition. *Citizens' Coach Co.* v. *Camden Horse Railway Co., 2 Stew. Eq. 299; Hagerty* v. *Lee, 18 Stew. Eq. 255.*

In the case of *Borden* v. *Atlantic Highlands, &c., Railway Co., 33 Atl. Rep. 277,* the late Chancellor McGill refused to grant a preliminary injunction to an abutting owner to restrain the building of an electric railway over a country road, on the ground that it imposed an additional servitude, holding that it had never been settled in this state that there was a difference in the servitude imposed in taking a public highway in the country from that charged in taking a city street.

I will advise a decree refusing the preliminary injunctions asked for, and dismissing the order to show cause, with costs in each case.