WILLIAM SPECHT ET AL., DEFENDANTS IN ERROR, v. CENTRAL PASSENGER RAILWAY COMPANY, PLAINTIFF IN ERROR.

Argued June 30, 1908—Decided March 19, 1909.

1. The granting by the municipal authorities of the right to install additional turnouts along the line of a single-track street railroad is an exercise of the power to regulate the public use of the streets. Such power may be exercised by the municipality (when conferred upon it by the legislature) without the consent of the property owners along the line of the road, notwithstanding that the road could not have been originally located and constructed except with the consent of a majority of such owners.
2. Municipal powers, which the legislature has provided shall be exercised by ordinance, cannot legally be exercised by resolution.

---

On error to the Supreme Court.

For the plaintiff in error, *Clarence L. Cole* and *Richard V. Lindabury.*

For the defendants in error, *Charles C. Babcock.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The city council of Atlantic City, on the 18th of June, 1906, passed a resolution authorizing the Central Passenger Railway Company (which maintains and operates a single-track street railway in certain of the streets of that municipality, including South Carolina and Virginia avenues) to construct a "turnout" two hundred and six feet in length on South Carolina avenue, and another one on Virginia avenue, two hundred and sixty-one feet in length. Specht and his associates, the defendants in error, sued out a writ of *certiorari* to test the validity of the resolution, and upon the hearing the Supreme Court condemned it and set it aside.

The Central Passenger Railway Company, the plaintiff in error, contended, both in the Supreme Court, and before us, that the defendants in error had no standing which entitled them to prosecute the *certiorari,* for the reason that none of them had any property interest which would be specially injured by the action authorized by the resolution. The Supreme Court found that they owned real estate fronting on the avenues named, which was located so near to the places where the proposed turnouts were to be installed as to make it reasonably certain that such property would be injuriously affected thereby. There was legitimate evidence to support such a finding, and, that being so, the conclusion of the Supreme Court upon that point is not reviewable here. *Morris & Cummings Dredging Co.* v. *Jersey City,* 35 *Vroom* 587; *Beecher* v. *Newark,* 36 *Id.* 308.

The plaintiff in error further insists before us that the judgment of the Supreme Court declaring the resolution in question invalid is without legal support, and should be reversed.

It appears from the proofs in the case that the Central Passenger Railway Company was organized under the Street Railway law of 1886 (*Gen. Stat., p.* 3216), and that its authority to construct its railway in Atlantic City rests upon an ordinance of that municipality passed December 30th,

1903, pursuant to powers conferred upon the municipality by the act of April 21st, 1896, entitled "An act to regulate the construction, operation and maintenance of street railroads in this state." *Pamph. L., p.* 329. That act prohibits the building of a street railway in any municipality of the state except by the permission of the governing body of such municipality, and provides that such permission shall not be granted unless the written consent has been obtained of the owners of at least one-half in amount in lineal feet of property fronting upon the streets through which the railway is proposed to be constructed, and then only after public notice is given and a public hearing is had. All of these prerequisites were complied with when the ordinance was passed granting permission to the defendant company to construct and operate its road.

The ground upon which the Supreme Court condemned the resolution was that the effect of installing these turnouts would be to change the character of the railway from a single to a double-track system at the places where they were located; that the act of 1896 prohibited the city council from permitting this to be done except after public notice and hearing, and the consent of the owners of at least one-half of the property fronting on the line of the railway, and that none of these preliminary steps had been taken.

In our opinion the Supreme Court has misconceived the purpose and scope of the act of 1896. It deals only with the original installation of a street railroad system, and not with incidental changes in that system afterward made necessary by reason of original defects in it which experience has disclosed, or by the gradual increase of public travel on the railway. The putting in of turnouts on a single-track road does not operate to change it to a double-track road to any extent, for turnouts are a necessary part of a single-track system. Without them the company would be limited in its operation to the running of one car back and forth upon its road, for there would be no place where cars running in opposite directions could pass one another. The power of the governing

body of a municipality to authorize incidental changes in the character of a street railway, without public notice and hearing, and without the consent of abutting property owners, has been affirmed by this court in the case of *Moore* v. *Haddonfield*, 33 *Vroom* 386. In that case the original permission to construct the railway was granted before the passage of the act of 1896, but the statutory prerequisites of public notice and hearing and consent of property owners were prescribed by an earlier statute then in force, and these prerequisites had been complied with when the permission to construct and operate the road was granted. Subsequently an amended ordinance was passed by the Haddonfield council which, among other things, did away with a derailing switch provided for by the original ordinance and also authorized the narrowing of the gauge of the track. It was held both in the Supreme Court (32 *Vroom* 470) and in this court that the statute did not require a new public notice and hearing, and new consents from property owners, in order to vest the municipality with power to authorize the railway company to make such changes.

The granting by the municipal authorities of the right to make incidental changes such as those disclosed in the Haddonfield case is the exercise of the power to regulate the public use of the streets which is vested in most of our municipalities, and is so declared in our opinion in that case. That power is vested in the city of Atlantic City by section 14, *placitum* 40 of the act of April 3d, 1902, entitled "An act relating to, regulating and providing for the government of cities" (*Pamph. L., p.* 284), which is in force in that municipality. That *placitum* empowers the city to regulate the use of its streets "by any street railway company or companies operating a street railway therein." The installation of additional turnouts in a single-track railroad, when increased travel makes them necessary for the public convenience, is not a radical change in the system itself, requiring (perhaps) proceedings *de novo* under the act of 1896, but a mere incidental change in the use of the streets, as much so as the

taking out of derailing switches, and the narrowing of the gauge of the tracks, and can equally be required by the municipality under its authority to regulate the use of those streets.

But, notwithstanding the conclusion which we have reached upon the main question, we are of opinion that the judgment under review must be affirmed. The fourteenth section of the act of 1902, which confers upon Atlantic City the power to regulate the use of its streets by street railway companies, requires that such power shall be exercised by ordinance, and the eleventh section of the act requires that all ordinances passed by council shall be submitted to the mayor of the city for his approval. The proceeding in the present case was by resolution, and was not submitted to the mayor. It complied with the statutory requirement neither in form nor in substance. It was, consequently, not a lawful exercise of the power conferred by the statute, and is a nullity.

It is proper to add that it is not claimed by the defendants in error either by their reasons filed in the Supreme Court, or in argument here, that the tracks authorized by the resolution under review are anything more than mere turnouts, and that we have therefore dealt with the resolution as a determination by the city council, made in good faith, that turnouts at the places, and of the length specified therein, were reasonably necessary for the proper operation of the single-track railway of the plaintiff in error.

The judgment under review will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J.    13.

*For reversal*—None.