ST. COLUMBA'S CHURCH OF NEWARK. PLAINTIFF IN ERROR, v. PUBLIC SERVICE RAILWAY COMPANY, DEFENDANT IN ERROR.

Argued July 6, 1910—Decided November 14, 1910.

1. The written consents of abutting landowners required by the act of April 21st, 1896 (*Pamph. L., p.* 329), to confer jurisdiction upon the governing body of a municipality to grant permission for the construction of a street railway in the street, are, in effect, votes, and the public interests involved clothe such votes with a public character, and hence exclude the idea that they may be lawfully cast from any motive of exclusive personal profit or benefit.

2. A consent of an abutting landowner required by the act of April 21st, 1896 (*Pamph. L., p.* 329), to confer jurisdiction upon the governing body of a municipality to grant permission for the construction of a street railway in the street contained a proviso "but without switch." *Held—*

(1) That the proviso "but without switch" in the consent is illicit and hence nugatory in two respects—*first*, because it is for the exclusive personal benefit of the consenting landowner, and, *second*, because it is the substitution of another will for that of the representative of the public interests.

(2) That the proviso did not nullify the consent.

(3) That the consent, notwithstanding the proviso, was effectual for the purpose of conferring jurisdiction upon the legislative body of the municipality to grant permission for the construction of the railway.

(4) That, having thus acquired jurisdiction over the subject-matter, the legislative body could lawfully disregard the proviso "but without switch."

On error to the Supreme Court.

For the plaintiff in error, *Lum, Tamblyn & Colyer.*

For the defendant in error, *Frank Bergen.*

The opinion of the court was delivered by

TRENCHARD, J. This is an action of ejectment brought in the Supreme Court by the St. Columba's Church of Newark

354    COURT OF ERRORS AND APPEALS.

St. Columba's Church v. Pub. Serv. Ry. Co.    *80 N. J. L.*

against the Public Service Railway Company. The defendant pleaded not guilty.

At the trial, at the Essex Circuit, the judge, sitting without a jury, upon a consideration of the "stipulation as to the facts" made by the respective parties to the action, found the defendant not guilty, and this writ of error brings up for review the judgment thereupon entered.

The plaintiff, by its action, seeks to recover the possession of a small piece of land within the lines of Thomas street, in Newark, being a part of that part of the street on which the tracks of the defendant's street railway are laid.

It appears that the title of the plaintiff extends to the centre of the street, and that the legal title of the *locus in quo* is in the plaintiff, subject to a public easement for street purposes.

It further appears that the North Jersey Street Railway Company was organized under the Traction act of March 14th, 1893 (*Pamph. L., p.* 302), and, subsequently, by means of a consolidation agreement with other companies, formed the defendant company. In 1904, the North Jersey Street Railway Company made application to the board of street and water commissioners of Newark for permission to construct, operate and maintain a single track electric surface street railway, to be operated by the overhead trolley system in Thomas street, from Clinton avenue to Pennsylvania avenue, and in front of the plaintiff's land, and the board, by ordinance, granted such permission pursuant to the powers conferred by the act of April 21st, 1896, entitled "An act to regulate the construction, operation and maintenance of street railroads in this state." *Pamph. L.* 1896, *p.* 329. The act prohibits the building of a street railway in any municipality of the state, except by the permission of the governing body of such municipality, and provides that such permission shall not be granted unless the "consent, in writing, of the owner or owners of at least one-half in amount in lineal feet of property fronting on the streets" through which the railway is proposed to be constructed has been obtained. The entire length of the line applied for and granted by the ordinance of 1904 is about five hundred feet. The plaintiff gave its consent, as an abut-

ting owner, to the construction of the proposed railway, and that consent was a necessary part of the "one-half in amount in lineal feet" required and obtained by the defendant. The consent is in the usual form, except that it contains the words "but without switch." The pertinent part of the consent is this: "St. Columba's Church * * * hereby consents to the construction, operation and maintenance of a single track electric surface street railway by said railway company on said street and in front of said property, but without switch, to be operated by the overhead trolley system," &c.

It further appears that prior to 1904, a double-track street railway had been built and was operated by the defendant on Clinton avenue, and another on Pennsylvania avenue. The single-track railway, authorized by the ordinance of 1904, was laid on Thomas street between those avenues and was connected with both tracks on each of the avenues; and, in order to connect with the southerly track on Pennsylvania avenue, a cross-over to that track was permitted by such ordinance to be constructed, and was constructed, in front of the plaintiff's property. Ever since such tracks and connections were laid cars have been operated over them.

The plaintiff regards the connection of the single track on Thomas street with the tracks on Pennsylvania avenue, in the manner stated, to be inconsistent with its consent, and for that reason has brought the present suit.

In the consideration of this case two preliminary questions have suggested themselves—*first,* can the plaintiff recover in an action of ejectment against a mere instrumentality by which the public is enjoying its public easement, when the public is not represented in the suit?

*Secondly,* can the plaintiff recover in such an action where a public interest is concerned and where the public is not represented on a mere "stipulation as to the facts" made by the parties to the suit?

Neither of the questions stated have been argued by counsel, and since the conclusion which we have reached in this case renders their consideration unnecessary, we have not considered them.

The first question argued is: Are the connections of the single track on Thomas street with the double tracks on Pennsylvania and Clinton avenues "switches," taking that word as used in the plaintiff's consent?

For the purposes of this case we assume, without deciding, that they are, and proceed to a consideration of the main questions involved.

These questions are as to the legal character and effect of the consent given by the plaintiff.

The legal character of the written consent of a property owner to the construction of a street railway has never been clearly defined in this state. For a time such consents were evidently regarded as conveyances of an interest in land. There is some support for that view in the act of 1896, and other prior similar statutes, which require consents to be acknowledged as in case of deeds of conveyance. Besides, such consents commonly recite that they are given for a consideration. The consent of the plaintiff, in the present case, recites that it was given "in consideration of the sum of one dollar duly paid before the delivery hereof, and in consideration of the benefits accruing therefrom," and was properly acknowledged.

This view of the legal character of such consents was taken by the Supreme Court in *Montclair Academy* v. *North Jersey Street Railway Co.*, 36 *Vroom* 328, where they are called "grants, consents or licenses" (at *p.* 332), but the opinion of the Supreme Court, in that case, seems inconsistent with the theory, now established in this state, that a street railway is not an additional servitude on the land within a public highway, but a legitimate use of such a highway. *Roebling* v. *Trenton Passenger Railway Co.*, 29 *Id.* 666; *Kennelly* v. *Jersey City*, 28 *Id.* 293.

The decision by the Supreme Court in the Montclair Military Academy case has never been technically overruled, but this court in a subsequent proceeding in that case (41 *Vroom* 229) rejected the view expressed by the Supreme Court, and apparently adopted the notion first suggested by Mr. Justice

Garrison, speaking for the Supreme Court, in *Currie* v. *Atlantic City,* 37 *Id.* 140. Mr. Justice Garrison there said:

"The so-called 'consents' are neither licenses nor concessions granting to the railway company some interest in land or right in the highway; on the contrary, they are the statutory mode of conferring upon the legislative body of the municipality jurisdiction over a special subject. No appreciable weight, therefore, attaches to arguments or decisions that treat these consents as licenses to the railway company, or as easements, or, as in one frequently-cited case, 'incorporeal hereditaments,'" referring to *Detroit Street Railway Co.* v. *Detroit,* 64 *Fed. Rep.* 628; 26 *L. R. A.* 667, 678.

Again, the Supreme Court said in that case:

"That the consent of a majority in amount of abutting property owners was intended to confer a jurisdiction upon city council, and not to grant an interest in real estate to the railway company, seems clear from the consideration that such railway use imposes no additional servitude upon the property owner's fee in the highway. There being, therefore, nothing for an easement to operate upon, it is not permissible to assume that the legislature intended to require a purely nugatory concession from the landowners. Upon the other hand, the hypothesis that some real interest in the highway is acquired by the railway through these consents, involves two inadmissible assumptions—*first,* that the legislature thought it was imposing an additional servitude upon the land in the street, and *second,* that it was intended to impose such servitude without requiring compensation as to those owners who did not consent to its imposition. Both horns of this dilemma are avoided, without departing from the plain words of the statute, by regarding the right of the municipal body to assume this special jurisdiction as depending upon the adoption of a legislative scheme by the special class of voters named therein. * * * In the present instance, the voters are the owners of property fronting on the streets affected; the written consents of these owners are the ballots, and the ratio between the sum total of consents and lineal frontage of abutting property voted upon determines whether

358    COURT OF ERRORS AND APPEALS.

St. Columba's Church v. Pub. Serv. Ry. Co.    *80 N. J. L.*

the legislative scheme conferring the special jurisdiction has been adopted."

It is true that the Currie case was reversed on another point in this court (37 *Vroom* 671), but the views of the Supreme Court as to the legal character of consents of property owners were not disapproved. Moreover, as stated, such views seem to have been adopted by this court in *Montclair Military Academy* v. *North Jersey Street Railway Co.*, 41 *Id.* 229.

In that case Mr. Justice Dixon, reading the opinion for this court, said:

"Abutting owners have a certain relation to the public streets in front of their property, which, while it is subordinate to the public easement, yet places them on a footing unlike that of the rest of the community. Because of this relation special advantages and disadvantages accrue to them from street railways, and the legislative design clearly was that, unless it should be rendered probable that these advantages would exceed the disadvantages with regard to any proposed street, the railway should not be there laid. This probability was to be indicated by the consent of the owners of at least one-half of the abutting land. For the decision of the matter thus contemplated, the legislature treated these owners as a class, every member of which had similar interests to subserve, interests that in some degree were common to all. Properly to meet the confidence thus reposed, it was incumbent on each member to bear in mind and be influenced by these common interests only, so that his judgment would be as fair towards his neighbors as it was toward himself. To permit anyone of the class to barter for private and exclusive gain, this power over the concerns of his fellows would be subversive of the benign purpose of the legislature in delegating it."

It is thus seen that this court has heretofore properly assumed that such consents, required to confer jurisdiction upon the legislative body of a municipality to grant permission for the construction of a street railway in the street, are, in effect, votes, and that the public interests involved clothe such votes with a public character, and hence exclude the idea

that they may be lawfully cast from any motive of exclusive personal profit or benefit.

Such being the true legal character of such statutory consents, it remains to determine the exact legal effect of the proviso "but without switch" upon the consent in the present case and upon the board's permission to construct the railway in question.

The underlying question involved was stated, but not decided, in *Currie* v. *Atlantic City,* 37 *Vroom* 140. In that case it appeared that a property owner had given his consent for the "location of one track," and the Supreme Court said:

"The purpose apparent upon the face of this consent was to limit the exercise of the jurisdiction it conferred. There being nothing in the statute to authorize any such qualification by the property owner of his consent, it is contended, on behalf of the jurisdiction of city council, that the restriction was nugatory and had the legal effect of subtracting nothing from what preceded it. The question has, however, an importance disproportionate to its bearing upon the present case, to the decision of which it is not necessary. It is therefore passed without being decided."

In the consideration of this question, now calling for decision, it is quite important to bear in mind—first, that such consents or votes are of a public character and not *inter partes,* and second, that the consent is *not* that the railway be permitted to be constructed, *but that a jurisdiction to decide that question shall be vested in the local legislature.* The latter fact is pregnant with meaning, for it imperatively implies that an untrammeled legislative discretion is part of the public policy of which the votes are also a part. These rules of law the consenting landowner is (by a fiction) presumed to have known, and, hence, by a judicial rule, his conduct is to be judged by them. From this it follows that the consent, when given, is not to be subtracted from by anything in the consenter's mind that he knew (by the legal fiction) was illicit and hence nugatory. When, therefore, the consenter says, in effect, "I consent to the vesting of this jurisdiction to be exercised according to law," and adds, "on condition that

my will and not the discretion of the lawmaker shall prevail," he announces an illicit proviso that he is to be charged with knowing that the legislative body ought to disregard, and hence he presumably knew that they would if it ran counter to their best judgment.

The proviso "but without switch" in the consent in the present case is illicit, and hence nugatory in two respects— *first,* because it is for the exclusive personal benefit of the plaintiff, and *secondly;* because it is the substitution of another will for that of the representative of the public interest. In such case when the voter, in the face of all that he illicitly seeks, notwithstanding *does consent,* the judicial view is that he subordinates his personal desires to his public duty and says, in effect: "As a voter charged with a public duty I consent, but, as an individual, influenced by illicit considerations, I have a personal preference which I seek to impose, but it does not lead me to withhold my consent." In such circumstances, the legislative body might say, in effect, "We note that you consent, we also note your wishes in the matter. You have vested us with jurisdiction to act for the best interest of the public, including yourself, and we accept all that is lawful in your vote and will properly exercise the jurisdiction conferred."

So it is clear that the proviso "but without switch" did not nullify the consent in the present case. In this connection it will be noted that in the case of *Hutchinson* v. *Belmar,* 32 *Vroom* 443, it appeared that one of the consents stated that the proposed street railroad should be built to a certain point by February, 1898. Referring to that statement in the consent, the opinion of the Supreme Court states: "The proviso to his consent *did not nullify it* and was fully recognized." The decision of the Supreme Court, in that case, was affirmed by this court, upon the opinion read in the Supreme Court. 33 *Id.* 450. And in the case of *Shepard* v. *East Orange,* 40 *Id.* 133, it appeared that one of the consents contained the words, "provided said railway is in operation one year from date." In considering that proviso, the Supreme Court said (*p.* 136):

"We think that this proviso simply created a condition subsequent that *did not nullify the consent in praesenti.* The condition may easily be fulfilled, or, if not, may be waived." The decision of the Shepard case, in the Supreme Court, was reversed in this court (41 *Vroom* 203), for the reason that one of the essential consents was signed by a party who did not hold title to the abutting land, but nothing was said in this court about the proviso in one of the consents to which we have referred.

From what has already been said it seems equally clear that the consent of the plaintiff, notwithstanding the proviso "but without switch," was effectual for the purpose of conferring jurisdiction upon the board of street and water commissioners of Newark to grant permission to the railway company for the construction of its railway.

It is equally clear, too, that the board, having thus acquired jurisdiction over the subject-matter, could lawfully disregard the proviso.

Suppose the "connection," as the ordinance calls it, or the "switch," as the plaintiff calls it, had not been authorized by the ordinance and had not been constructed. In that case the plaintiff would have had no cause of action, because its understanding of its consent would have been complied with. But it seems that, in that situation, the board of street and water commissioners of Newark, at any subsequent time, could have lawfully authorized the "switch" to be made without notice to the plaintiff and without further consent upon the plaintiff's part. It will be noticed that in the case of *Specht* v. *Central Passenger Railway Co.,* 47 *Vroom* 631, the present Chief Justice, speaking for this court, said: "The power of the governing body of a municipality to authorize incidental changes in the character of a street railway, without public notice and hearing, and without the consent of abutting property owners, has been affirmed in this court in the case of *Moore* v. *Haddonfield,* 33 *Vroom* 386, 792. In that case the original permission to construct the railway was granted before the passage of the act of 1896; but the statutory prerequisites of public notice and hearing and consent

of property owners were prescribed by an earlier statute then in force, and these prerequisites had been complied with when the permission to construct and operate the road was granted. Subsequently, an amended ordinance was passed by the Haddonfield council, which, among other things, did away with a derailing switch provided for by the original ordinance, and also authorized the narrowing of the gauge of the track. It was held, both in the Supreme Court (32 *Id.* 470) and in this court, that the statute did not require a new public notice and hearing, and new consents from property owners, in order to vest the municipality with power to authorize the railway to make such changes. The granting by the municipal authorities of the right to make incidental changes, such as those disclosed in the Haddonfield case, is the exercise of the power to regulate the public use of the streets, which is vested in most of our municipalities, and is so declared in our opinion in that case."

After referring to the act under which the government of that city was organized, the opinion proceeds:

"The installation of additional turnouts in a single-track railroad, when increasing travel makes them necessary for the public convenience, is not a radical change in the system itself, requiring (perhaps) proceedings *de novo* under the act of 1896, but a mere incidental change in the use of the streets, as much so as the taking out of the derailing switches, and the narrowing of the gauge of the tracks, and can equally be required by the municipality under its authority to regulate the use of the streets."

The authority of the board of street and water commissioners over the streets of the city of Newark is quite as broad as that of Atlantic City over the streets of that municipality. See *Gen. Stat., p.* 471, §§ 10, 12.

It is important to observe, in connection with this phase of the case, that the act of 1896 contains two distinct provisions —*first,* that authorizing, under certain conditions therein stated, the grant by ordinance of permission to construct, operate and maintain the railway upon the street or streets named in the petition, or a part thereof, and *second,* the defi-

nite location of the rails and poles. The consent of the property owners is required only to vest jurisdiction in the governing body to determine whether or not a street railroad may be constructed on a given street. The actual *location of the rails and poles* may be dealt with either at the time when permission for the construction of the street railroad is given or at a subsequent time. The words of the statute in this respect are significant:

"The governing body to whom application is made may, either at the time of giving its permission, as aforesaid, or at a subsequent time, fix and determine by resolution the location of the rails or tracks of such street railway in the streets, highways and public places in which the construction, operation and maintenance of such street railway is granted, and may, in like manner, determine the place or places in which poles shall be located and conduits constructed."

Since we have thus reached the conclusion—first, that the proviso "but without switch" in the plaintiff's consent was nugatory; second, the proviso did not nullify the consent; third, that the consent, notwithstanding the proviso, was effectual for the purpose of conferring jurisdiction upon the board of street and water commissioners to grant permission for the construction of the railway, and fourth, that, having thus acquired jurisdiction over the subject-matter, the board could lawfully disregard the proviso, it follows that the defendant's tracks are not shown to be an unlawful occupation of the street.

The judgment of the court below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, DILL, CONGDON, JJ. 11.

*For reversal*—THE CHANCELLOR, VREDENBURGH, VROOM, JJ. 3.