15 N.J. Super. 604 (1951)
83 A.2d 809
JOHN J. GROGAN, EDWARD J. BORRONE AND CARMELA FINIZIO, PLAINTIFFS,
v.
FRED M. DeSAPIO, MICHAEL M. BORELLI, THOMAS A. GALLO, THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, A MUNICIPAL CORPORATION OF NEW JERSEY, AND THE BOARD OF COMMISSIONERS OF THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, N.J., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 6, 1951.
*607 Messrs. McGlynn, Weintraub & Stein (Mr. Joseph Weintraub appearing), attorneys for plaintiffs.
Mr. Dominick J. Marrone (Mr. Otmar J. Pellet appearing), attorney for defendants.
HARTSHORNE, J.C.C. (temporarily assigned).
Plaintiffs, two of the members of the Board of Commissioners of the City of Hoboken, together with a taxpayer, have filed the above complaint against the three other Hoboken city commissioners, plus the board itself and the municipality as a body corporate, asking that the resolutions passed at the so-called organization meeting of the board on May 15, 1951, distributing the city departments and subordinate administrative functions between the individual commissioners, be set aside as illegal and void. After the filing of the complaint, plaintiffs, under the order of the court, took lengthy depositions of defendants for discovery before trial. As a result of such discovery, plaintiffs thereupon obtained the authority of the court to amend their complaint in order to amplify the charges therein contained.
Defendants move to strike the amended complaint for failure to state a cause of action. Rule 3:12-2. We accordingly turn to the allegations of such complaint, which, for the purpose of this motion, the court must take as true.
After charging that the defendants, the majority of the Hoboken commissioners, met previous to the organization meeting, without notice to the plaintiff minority members, and in their absence agreed to strip the minority commissioners of practically all the powers and functions usually vested in the departments to which they were to be assigned, the amended complaint adds:
"By said agreement made privately as set forth in Paragraph 9, each individual defendant irrevocably bound himself to vote for said resolutions A, B, C, D, and E, at the public organization meeting and to do so notwithstanding anything which the plaintiff commissioners might urge in opposition thereto at said public meeting. The *608 said individual defendants severally and jointly determined prior to said public meeting that they would not at the public meeting listen to, consider or deliberate upon any objections which the plaintiff commissioners might advance at the public meeting in opposition to said distribution of powers and duties, and at the said public meeting the individual defendants did refuse to enter into any discussions of the subject with the plaintiff commissioners. The said resolutions were not the product of the joint deliberation of all of the members of the Board of Commissioners, nor the product of joint deliberation of the members of the Board at a meeting held on notice to all members of the Board, but in fact were the product of a private meeting held by the individual defendants alone without notice to the plaintiff commissioners and without opportunity to them to participate as members of the Board therein."
This substantially charges that, at least as to the resolutions in question, the organization meeting called for by the statute (R.S. 40:72-6) was a mere sham, the entire administration of the City of Hoboken having been irrevocably decided upon at a preceding private gathering of the majority commissioners, meeting as individuals and in the absence of, and without notice to, the minority commissioners.
In further paragraphs of the complaint detailed allegations are made which need not be recited at length, charging that, instead of these resolutions having been adopted for public purposes and by a method "appropriate" to the public welfare, within the discretion of the commissioners (R.S. 40:72-5), said resolutions were not "appropriate" to the public welfare, according to facts specifically alleged, but were in fact "adopted in bad faith and constitute an abuse of discretion and fraud upon the statute."
Defendants' motion to strike the amended complaint thus, in essence, poses the questions:
(1) Can the administrative set-up of a city government, operating under the commission form, be finally determined upon by the majority of the board, meeting privately as individuals, in the absence of the minority; or must same in fact result from the regular organization meeting, participated in freely and with an open mind, by a quorum at least, of each of the duly elected commissioners?
*609 (2) Can such administrative set-up of such city government be the product, not of the actual judgment of the members of the city commission, exercised in their sound discretion, as "appropriate" for the public welfare, but in disregard of the public welfare, in bad faith, and as an abuse of discretion?
To answer these questions in detail would appear almost a matter of supererogation. But since the first question is claimed to be one of novel impression, in city government at least, and as to the second the application of the principles involved has often proven difficult, we proceed.
Considering the first question, we turn primarily to the statute by which the state authorizes the city to govern itself. This specifically provides that the administrative subdivision of the city government shall occur at the organization meeting.
R.S. 40:72-5 "The board of commissioners shall determine the powers and duties to be performed by each department and shall assign such powers and duties to each department as it may deem appropriate. The board shall prescribe the powers and duties of all officers and employees and may assign particular officers and employees to one or more departments and may require any officer or employee to perform duties in two or more departments if the work required of such officer or employee in such different departments be similar in character, and make such other rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the municipality."
R.S. 40:72-6. "The board of commissioners shall, at the first regular meeting after the election of its members, designate by majority vote one commissioner to be director of the department of public affairs, one commissioner to be director of revenue and finance, one to be director of the department of public safety, one to be director of the department of public works, and one to be director of the department of parks and public property, * * *."
Obviously, such statutory meeting connotes a true meeting where, to reach a lawful decision, each of the participants will consider with an open mind the viewpoints of his colleagues before reaching a decision. Thus alone can the basic principles of representative government be achieved, whereby the people are governed, not by some of their duly-elected *610 representatives, but by all of them. Were this not the case, no meeting at all need occur. Each commissioner could as well mail his vote separately from his own home, and thereby decide the method of governing the city.
Our courts have long recognized this principle. In Whittingham v. Hopkins, 70 N.J.L. 322 (E. & A. 1903), the court said at p. 325, in alluding to a decision made by an analogous local governing body: "One object of the law, manifestly, was to obtain the benefit of the combined judgment of these public officers while assembled together as a body, having opportunity to interchange opinions with each other in their final action. Signing upon separate occasions by individual officers, in the absence of their associates and upon the pressure, perhaps, of interested parties, might be fraught with great danger to both public and private interests." Recently this same principle was reiterated by our present Supreme Court in alluding to the action of a quasi-legislative state board: "the findings of fact shall be the product of deliberation and conference of all members of the board to the end that their views and reasoning be considered by the other members in reaching a determination." New Jersey Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354, 380 (1950).
The argument of the defendants to the contrary relies upon an alleged analogy to a party caucus. But, even admitting the analogy, this involves a misunderstanding of the true nature of a caucus, an institution recognized in New Jersey more by custom than by the written law. A party caucus, when properly conducted, performs an appropriate function in attempting to attain a tentative consensus between various elements within the same party, so that the viewpoint of these various elements may be better determined, and thus this viewpoint better and more simply expressed, at the legal meeting which follows. However, it is the consideration of the matter, and action thereon, at this lawful meeting which is, and must be, the real and determining factor. This is made clear in the present situation by the very words of the *611 statute above quoted. It is not the individual commissioners, but "the board of commissioners (which) shall determine the powers and duties to be performed by each department and shall assign such powers and duties to each department as it (the board) may deem appropriate. The board shall prescribe the powers and duties of all officers and employees * * *"
Obviously, where, as alleged in the complaint, the statutory determination has been made, in fact and irrevocably, before the lawful meeting occurred, such meeting is but a sham. In regard to the matter in question, the meeting is thus as if it had never occurred. That valid action must emanate from a valid meeting is clear, not only from the above authorities, but from the following: Holcombe v. Trenton White City Co., 80 N.J. Eq. 122, 133, 134 (Ch. 1912); Dey v. Mayor and Common Council of Jersey City, 19 N.J. Eq. 412, 416 (Ch. 1869); State v. Union Light, Heat & Power Co., 182 N.W. 539 (N.D. 1921); Herrington v. District Township of Liston, 47 Iowa 11 (Sup. Ct. 1877); 2 Dillon, Municipal Corporations (5th ed.), sec. 501.
We next turn to the allegations of the complaint that the resolutions in question are not "appropriate" as required by the statute, but on the contrary were "adopted in bad faith and as an abuse of discretion and fraud upon the statute." Not only the courts of this State, but those throughout the country have had many occasions to consider the effect of such allegations as to municipal action. And, in view of the widely variant character of the factual situations involved, the courts have naturally stressed in each case the effect of the different factors predominating in such case, with a resultant difference in verbiage. However, the principles running through the decisions both in this State and throughout the country seem clear. 2 McQuillin, Municipal Corporations (3rd ed.), sec. 10.37. These principles can be simply stated. Courts exist solely to declare and enforce the law, and are without authority as to matters of mere governmental policy. Hence, all personal or political maneuvering, which complies *612 with the law, in substance as well as in form, is beyond the authority of the courts to control. Thus if, because of either personal or political motives, officials fail to take the course of action best suited to the public interest, but take a course less beneficial to the public, yet, if the action taken was both in fact and in form in accord with the law, the remedy available to the citizens for the failure to take the best course lies, not with the courts, but at the polls.
On the other hand, if officials violate the law either in substance or in form, the courts are available for a remedy. This is so whether such violation was due to personal or political maneuvering, to bad faith, to an abuse of discretion, or for other cause. Such possible motives indeed are evidential, in corroboration of the claim that the action taken was in fact in violation of the law. In the case at bar the primary question in this regard is whether the above resolutions were "appropriate" to the public interest within the discretion of the commissioners. This discretion means an honest, and not a purely arbitrary or corrupt, discretion. Tagliareni v. Stilz, 120 N.J.L. 5 (Sup. Ct. 1938), affirmed 121 N.J.L. 49 (E. & A. 1938); Berdan v. Passaic Valley Sewerage Com'rs., 82 N.J. Eq. 235 (Ch. 1913); Oakley v. Atlantic City, 63 N.J.L. 127 (Sup. Ct. 1899); Blair v. Brady, 11 N.J. Misc. 854 (Sup. Ct. 1933). It is, of course, quite immaterial that in such cases the facts involved did not call for court action under the above principles. The allegations of the present complaint in this regard, with which we are here solely concerned, and the truth of which is not presently open to question, detail why such resolutions can in no real sense be considered "appropriate" to the welfare of the city. And such allegations then continue in detail to charge that the reasons advanced by the defendant commissioners themselves for the adoption of such resolutions were patently unsound, and that the defendants voted for same, not because they deemed them so "appropriate," but for other reasons amounting to bad faith and an abuse of their discretion as public officials. That such allegations *613 entitle plaintiffs to submit the truth of their charges to the determination of a jury, is in accord with the principles recognized by our courts in the above cases.
Nor is Moore v. Haddonfield, 62 N.J.L. 386 (E. & A. 1898) to the contrary. In the Haddonfield case, the court's allusion to bad motives, on which defendants rely, comes at the very end of its opinion, and only after it finds that its previous reasoning "disposes of the question that was reargued from the point of view upon which the decision rests." It would thus seem that this language as to motives is little more than dicta, and by a sharply divided court, in which the Chancellor and the Chief Justice take opposing views. Furthermore, in the later case of American Grocery Co. v. New Brunswick, 124 N.J.L. 293 (Sup. Ct. 1940), affirmed 126 N.J.L. 367 (E. & A. 1941), at page 297, the Haddonfield case is cited as being one where "neither personal interest, fraud or corruption on the part of the commissioners is intimated or charged." For the court there cites the Haddonfield case as holding motives to be immaterial, "under these circumstances." See in accord with the American Grocery case, Clark v. Landis Township, 126 N.J.L. 371 (Sup. Ct. 1941); Reimer v. Mayor, etc., of Allendale, 123 N.J.L. 563 (Sup. Ct. 1939); McQuillin, Municipal Corporations, sec. 10.37, supra.
To the defendants' objection to the joinder of a taxpayer as plaintiff, and of the individual commissioners as well as the corporate municipality as defendants, the answer is clear. A taxpayer is the traditional party plaintiff to proceedings under prerogative writs, or in lieu of prerogative writs, charging a violation of the statutes relating to government. Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163, 170 (App. Div. 1949); Streeper v. Auditorium Kennel Club, 13 N.J. Misc. 584 (Sup. Ct. 1935). That the individual commissioners have an interest in the resolutions now under attack, passed solely by their votes, is obvious. That the municipal corporation is concerned with *614 the distribution of its administrative functions is also clear. See Tagliareni v. Stilz, supra.
Since the complaint, asking that the resolutions in question be set aside as illegal, sets forth a cause of action, for the reasons stated, the motion to dismiss will be denied.