WILLIAM J. REIMER, PROSECUTOR, v. MAYOR AND COUNCIL OF THE BOROUGH OF ALLENDALE AND BOROUGH OF ALLENDALE, DEFENDANTS.

---

WILLIAM B. OSBORNE, PROSECUTOR, v. MAYOR AND COUNCIL OF THE BOROUGH OF ALLENDALE AND BOROUGH OF ALLENDALE, DEFENDANTS.

Argued October 5, 1939—Decided December 29, 1939.

564

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutors, *Abram A. Lebson* and *Landau & Mehler* (*William George,* of counsel).

For the defendants, *Walter W. Weber* (*John Milton* and *Thomas McNulty,* of counsel).

The opinion of the court was delivered by

HEHER, J.  Prosecutors assail an ordinance adopted by the defendant borough on April 13th, 1939, entitled "An ordinance abolishing the Police Department in the Borough of Allendale and repealing an ordinance entitled 'An ordinance to regulate and establish a Police Department in the Borough of Allendale,' passed and approved September 13th, 1928." A preamble declared that it was "in the best interests of the

inhabitants" of the borough "that the Police Department be abolished and that necessary police protection be provided on a more economical basis."

In sum, these are the asserted grounds of invalidity argued: (1) The point that "reasons of economy" motivated the challenged municipal action "is not made in good faith, but is a subterfuge in order to oust prosecutor from his office;" (2) the action so taken "was contrary to and in violation of the overwhelming protests of more than seventy-five per cent. of the legal voters and was, therefore, arbitrary, oppressive, illegal and contrary to the substantial rights not only of the prosecutor Reimer, but of all the inhabitants of the Borough;" (3) the substituted police system "results in a serious impairment of the security of the lives, persons and property of the inhabitants" of the borough, "and a saving at such a price is against public policy;" and (4) the ordinance "was the product of a malicious effort to oust" prosecutor Reimer "from his office of Chief of Police by indirect means and without the formality of charges and hearing thereon."

We find nothing of substance in any of these contentions.

The evidence establishes, as was avowed in the preamble to the ordinance, that retrenchment was the governing body's objective. There is an utter lack of proof of bad faith. Prior to the adoption of the ordinance thus repealed, September 13th, 1928, the municipality was policed under what has been termed the "marshal system." The police department established under the repealed ordinance consisted, at the time of the passage of the repealer, of a chief and two full-time patrolmen. Part time service was rendered by six marshals. Following the adoption of the repealer, the "marshal system" was restored. The six marshals were continued in service and and nine more were appointed, all to be compensated for services rendered in accordance with the need. While denied by prosecutor Reimer, the proofs reveal that he was tendered the post of chief marshal, and declined it. He would not submit to a reduction of compensation.

The change effected an annual saving in the police budget of approximately $5,000. The yearly cost of police protection had increased from $1,600 in 1927, to $7,800 in 1938,

while the population had increased in the same period from one thousand seven hundred to two thousand. The police budget for the year 1928, when municipal expenditures had reached the peak, totaled but $2,870; and we are unable to discern any basis in the evidence for the rejection of defendants' contention that the challenged ordinance was designed to scale expenditures down in accordance with the reduced financial capacity of the taxpayers consequent upon the current trade depression. The police department was not singled out for more prudent management. There had been a general reduction of governmental costs; and the budget requisite for the administration of the police bureau as it then existed was out of all proportion both to police requirements and the aggregate of the moneys appropriated for the operation of the government. The total amount to be raised by taxation for local needs and purposes under the 1939 budget was $18,497.02. It was estimated that $2,500 would be the cost of operating the police department under the system set up after the passage of the ordinance under review.

The evidence does not warrant the conclusion that economy was a mere subterfuge to cloak a sinister purpose to deprive prosecutor Reimer of his office in violation of his rights under the law. This policy of retrenchment was in execution of pre-election pledges made to the electorate. The existing system was the product of the period when municipalities generally expanded their activities unaware of the approaching financial debacle; and the action now questioned was unmistakably motivated by a purpose to curtail expenditures in consonance with the necessities of the radically different conditions that followed the economic collapse. It was deemed to be a sound municipal economy. The non-existence of "financial stringency in the Borough" is not the determinative. Economy is not a virtue to be practiced only when there is financial stress.

It is not our function to pass upon the wisdom of the policy embodied in this municipal action. It suffices to say that we entertain no doubt that the municipal governing body was and still is convinced that the system now provided will serve all community requirements, and that it had met all reason-

able demands prior to 1928, when the need was not the less great. The municipal rulers have been entrusted by the electorate with the responsibility of management, and they are answerable to the source of their authority for any shortcomings of policy and management.

We find no support in the proofs, not even the slightest, for the claim that the ordinance was the product of "personal malice" toward prosecutor Reimer, harbored by the mayor and a member of council. The things cited in support of this charge are all acts of these officers in the performance of what they conceived to be their official duty; there is nothing to support a contrary interpretation.

Plainly, this municipal action was not *ultra vires*. Section 40:47-1 of the Revised Statutes of 1937 contains an express grant of power. It invests the governing body with authority to "make, amend, repeal and enforce ordinances to establish, maintain, regulate and control a police department and force * * *." It is to be presumed that, in proceeding as it did, the governing body was moved in the public interest thus to exercise the statutory power. *Neumann* v. *Hoboken*, 82 *N. J. L.* 275; *North Jersey Street Railway Co.* v. *Jersey City*, 75 *Id.* 349; *Ivins* v. *Trenton*, 68 *Id.* 501; *affirmed*, 69 *Id.* 451; *Haynes* v. *Cape May*, 50 *Id.* 55; *affirmed*, 52 *Id.* 180; *Trenton Horse Railroad Co.* v. *Trenton*, 53 *Id.* 132. This presumption has not been rebutted. The action so taken, viewed in the light of the evidence *aliunde*, meets the test of validity laid down in the cases. *Maxwell* v. *Board of Commissioners of Wildwood*, 111 *Id.* 181; *affirmed*, 113 *Id.* 404; *Ziegler* v. *Hackensack*, 113 *Id.* 215; *affirmed*, 114 *Id.* 186; *Newark* v. *Civil Service Commission*, 112 *Id.* 571; *affirmed*, 114 *Id.* 185; *Moser* v. *Board of Commissioners of North Bergen*, 10 *N. J. Mis. R.* 315; *Branin* v. *Delaware Township*, 121 *N. J. L.* 602; *Flynn* v. *Byram*, 118 *Id.* 53; *Mattia* v. *City of Newark*, 122 *Id.* 557; *Cahill* v. *West Hoboken*, 90 *Id.* 398; *Camden* v. *Civil Service Commission*, 118 *Id.* 501.

The motives of those entrusted with such governmental power, proceeding within the allotted sphere of action, are not lightly to be categorized as evil in the legal sense. Mere mistakes of policy or of judgment, within the conferred

authority, are not ordinarily justiciable. Except where there has been an invasion of individual rights, through an unreasonable or other unlawful exercise of the granted power, they are remediable only at the hands of the electorate whence the authority came. *Seaman* v. *Perth Amboy,* 98 *N. J. L.* 174; *Rosencrans* v. *Eatontown,* 80 *Id.* 227; *Hamblet* v. *Asbury Park,* 61 *Id.* 502; *Pennsylvania Railroad Co.* v. *Jersey City,* 47 *Id.* 286; *State, Danforth, Pros.,* v. *City of Paterson,* 34 *Id.* 163; *State* v. *Jersey City,* 29 *Id.* 170; *Home Coal Co., Inc.,* v. *Board of Education of Bayonne,* 12 *N. J. Mis. R.* 728.

The writs are accordingly dismissed, with costs.