42 N.J. Super. 288 (1956)
126 A.2d 213
SEBASTIAN P. VACCARO AND ROSE-MARIE VACCARO, PLAINTIFFS-APPELLANTS,
v.
ASBURY PARK ENTERPRISES, A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued August 20, 1956.
Decided October 26, 1956.
*289 Before Judges PROCTOR, WAESCHE and HETFIELD.
Mr. David Goldstein argued the cause for the appellants (Messrs. Goldstein & Novogrod, attorneys).
*290 Mr. Max Brustin argued the cause for the respondent Asbury Park Enterprises.
Mr. Sidney J. Meistrich argued the cause for the respondents City of Asbury Park, Council of the City of Asbury Park, and J. Oliver Armstrong, City Manager and Acting Director of Public Works of said city.
The opinion of the court was delivered by WAESCHE, J.S.C. (temporarily assigned).
This suit was instituted in the Chancery Division of the Superior Court. The amended complaint, which is in two counts, is entitled "Amended Complaint and Complaint in Lieu of Prerogative Writs." The first count of the amended complaint is against the Asbury Park Enterprises, a New Jersey corporation. The second count is against the City of Asbury Park, the City Council, and J. Oliver Armstrong, City Manager and Acting Director of Public Works of said City.
The plaintiffs seek: (a) to enjoin the Asbury Park Enterprises from erecting any building or structure on a certain lot in said city in violation of a covenant or condition restricting the use of said lot subject to which the lot was purchased by the said defendant from the city; and (b) to compel the said defendant to erect on said lot a particular type of structure in accordance with the covenant subject to which the lot was purchased by the said defendant Asbury Park Enterprises, from the city.
The plaintiffs also seek to set aside a certain building permit issued to the Asbury Park Enterprises by the defendant Armstrong as acting director of public works and as city manager. They also request the court to order and direct the city officials to enforce the provisions of the covenant subject to which the city sold the said lot.
The defendants moved for a summary judgment to dismiss the amended complaint and complaint in lieu of prerogative writs. The motion was argued on affidavits and depositions. The court ordered that summary judgment be entered in *291 favor of all the defendants and against the plaintiffs dismissing the amended complaint and complaint in lieu of prerogative writs. The plaintiffs appealed.
The City of Asbury Park owned in fee Lot 1, Block 145, on the tax assessment map of said city. Block 145 is bounded on its northerly side by First Avenue; on its easterly side by Ocean Avenue; on its southerly side by Asbury Avenue; and on its westerly side by Kingsley Street. The said lot is in the form of an "L"; and it has frontage on each of the four streets on which Block 145 fronts. On First Avenue Lot 1 has a frontage of 124 feet, 2 inches. Lot 1 faces Ocean Avenue for the entire length of the block along that street, a distance of 250 feet. Lot 1 also faces Asbury Avenue for the entire length of the block along that street, a distance of 350 feet. On Kingsley Street, Lot 1 has a frontage of 65 feet. The lot contains approximately 46,300 square feet.
The plaintiffs own the remaining land in Block 145. Their property fronts on First Avenue and Kingsley Street; and contains 45,200 square feet.
The City Council of Asbury Park received an offer of $85,000 for the purchase of Lot 1, Block 145. Pursuant to N.J.S.A. 40:60-26(c) the city council, at a special meeting held on May 18, 1954, approved said offer subject, however, to final approval being given at a meeting of said council to be held on May 28, 1954. The city council directed that public notice be given of said offer, and of the meeting of the council at which time the offer would be given further consideration.
The said public notice stated that the city council had approved an offer of $85,000 for Lot 1, Block 145, and that other bids for the lot may be submitted to the council, verbally at public auction, at its meeting which was to be held at the city offices on May 28, 1954. The said notice further stated that the lot would be sold subject to a covenant that the purchaser would apply for and obtain a building permit "for the erection of an elevator apartment or apartment hotel building of not less than seven stories with *292 stores on the street level on the land facing Ocean Avenue and a building consisting of not less than one story store building or store and apartment building on the land facing Asbury Avenue, costing not less than $1,000,000." The public notice further stated that no structure or structures other than those mentioned in the said public notice shall be built upon said lot, and that the land shall not be used for any other purpose.
At the meeting of the city council held on May 28, 1954, no bids were submitted to the council for the purchase of said lot. The council thereupon accepted the offer of $85,000 theretofore made. The resolution accepting the said offer of $85,000 provided that the said lot shall be sold subject to a covenant that the purchaser shall apply for and obtain a building permit "for the erection of an elevator apartment or apartment hotel building of not less than seven stories with stores on the street level on the land facing Ocean Avenue and a building consisting of not less than one story store building or store and apartment building on the land facing Asbury Avenue costing not less than $1,000,000." Said resolution also stated that no structure or structures other than those specifically mentioned in the resolution shall be built upon said lot, and that said land shall be used for no other purpose.
Pursuant to said resolution, the lot was conveyed by the city by deed to Asbury Park Enterprises. The deed of conveyance contained the covenant heretofore mentioned and the restriction that no structure or structures other than those mentioned shall be built upon said lot, and that the land shall not be used for any other purpose.
After the Asbury Park Enterprises received the deed for the lot, it applied to the city for a building permit to erect, at the corner of Ocean Avenue and First Avenue, a seven-story apartment building with stores on the street level. This proposed building was to occupy only 69 feet of the Ocean Avenue frontage. The said application also sought to obtain permission to erect on the remaining portion of Lot 1, facing Ocean Avenue, a one-story building for stores.
*293 The City Council of Asbury Park, by resolution, approved the plans and specifications submitted to it by the Asbury Park Enterprises, which provided for the erection of a one-story building for stores on 176 feet of Lot 1 facing Ocean Avenue. A building permit was thereupon issued which permitted the erection of a one-story building facing 176 feet on Ocean Avenue.
One of the contentions of the plaintiffs is that the granting of a building permit to the Asbury Park Enterprises permitting it to erect a one-story building on a portion of Lot 1, Block 145, facing Ocean Avenue, was an improper and illegal act and should be set aside. The plaintiffs are taxpayers of Asbury Park and, since their property abuts Lot 1, they have a special interest in the type of building to be erected on said Lot 1. In the case of Ferry v. Williams, 41 N.J.L. 332 (Sup. Ct. 1879), the court said that certiorari will lie "at the instance of private persons for the redress or prevention of public wrongs by public bodies and officers, whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired." See, also, Schwartz v. Essex County Board of Taxation, 129 N.J.L. 129 (Sup. Ct. 1942); Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163 (App. Div. 1949); Tube Reducing Corp. v. Unemployment Compensation Commission, 1 N.J. 177 (1948). In the case of Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953), the court said, "In our State, perhaps more than any other, the prerogative writ has been used as a comprehensive safeguard against official wrong."
The statute under which Lot 1 was sold permits the governing body of a municipality to impose any restrictions on the use to be made of the land sold, or as to the type or size of any building to be erected thereon; provided, that any condition or restriction on the use to be made of the land shall be set forth at length in the advertisement of sale. R.S. 40:60-26, as amended L. 1948, c. 245.
*294 Paragraph 9 of the advertised notice of sale of the above mentioned lot provided that:
"The said lands and premises shall be sold subject to the following covenants and restrictions, to wit: The successful bidder shall apply for and obtain a building permit from the City of Asbury Park for the erection of an elevator apartment or apartment hotel building of not less than seven stories with stores on the street level on the land facing Ocean Avenue * * *."
The said notice of sale also provided that:
"* * * the covenants and restrictions mentioned in said deed shall be in full force and effect to the end that no structure or structures other than those mentioned in Paragraph 9 hereof shall be built upon said premises, and said premises shall be used for no other purpose."
The above provisions in the notice of sale were included in the deed of conveyance.
It is presumed that the governing body of Asbury Park in imposing the above limitation on the use of Lot 1, Block 145, where it faces Ocean Avenue, knew what they were doing, and that they acted in good faith for the benefit of the public. In the case of Reimer v. Mayor and Council of Borough of Allendale, 123 N.J.L. 563 (Sup. Ct. 1939), the court said: "It is to be presumed that, in proceeding as it did, the governing body was moved in the public interest thus to exercise the statutory power." See, also, United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131 (1926); and Earl v. Winne, 14 N.J. 119 (1953).
On September 20, 1955 the Asbury Park Enterprises applied to the city for a building permit which would allow the erection of a one-story building on said Lot 1 facing Ocean Avenue. On November 9, 1955 the City Council of Asbury Park adopted a resolution approving the plans for the erection of a one-story building for stores facing on Ocean Avenue. On November 11, 1955 the permit was issued. Since Lot 1 was sold subject to the restriction that no building other than an elevator apartment or apartment *295 hotel building of not less than seven stories would be erected on the lot facing Ocean Avenue, the permit to erect a one-story building for stores facing Ocean Avenue violates the said restriction.
It appears from the affidavits of the city councilmen that they did not think there were any restrictions against the erection of a one-story building on that part of Lot 1 facing Ocean Avenue, and that they, as members of the governing body, did not intend to impose any such restriction on the use of the lot. The fact is, however, that the land was advertised, sold and conveyed subject to such a restriction. The councilmen are required to display such intelligence and skill as they are capable of in discharging the duties of their office, and to be diligent and conscientious, Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952). Since it is obvious to anyone reading the advertisement of sale that the purchaser of the lot would not be permitted to erect thereon a one-story building facing Ocean Avenue, it must be assumed that the councilmen themselves knew of that restriction on the use of the lot since they themselves authorized the advertisement, and passed the resolution selling the lot subject to the restriction. Therefore, either the notice of sale was a legal fraud on the public because it misrepresented the actual conditions of the sale, and that the conditions were not imposed for the public benefit; or the issuance of the permit in violation of the conditions of sale is a legal fraud on the public. The legality of the sale of the land, subject to the aforesaid restriction, is not challenged and, until it is set aside, it must stand as an act done in the public interest, and one authorized by law. Hence, it follows that the issuance of the permit in violation of the conditions of the sale constitutes a legal fraud on the public.
In the case of Juice Bar Corp. v. Township Committee of Township of Neptune, 36 N.J. Super. 164 (App. Div. 1955), the court had under review the sale of land by the governing body of Neptune Township pursuant to N.J.S.A. 40:60-26(a). The court said that the purpose of the statute *296 was to suppress opportunities for fraud or favoritism. The court said further that
"While the pertinent statute permits the governing body to impose `any conditions of sale as to buildings or structures to be erected' on the lands, or `as to the type, size or other specifications of such buildings or structures,' it carries the mandate that `the restrictions on the use to be made of the land and the conditions of sale shall be set forth at length' in the advertisement. The reasonable import of this provision, if regarded as applicable to a condition obligating the purchaser to an affirmative future accomplishment, is that the condition shall be clearly and precisely expressed in the advertisement and be applicable in common to all bidders."
In the case of Markey v. City of Bayonne, 24 N.J. Super. 105 (App. Div. 1952), the court had under review the sale of land by the City of Bayonne. In that case the court said:
"A municipality may not advertise that it intends to sell certain lands and then, by subsequent deed, convey to the highest bidder lands in excess of those specifically described. To permit a municipality to do so would be a fraud upon the statute and in derogation of the public interest.
The purpose of publicly advertising a contemplated sale of park lands under N.J.S.A. 40:61-22.3 is to give to the world clear and definite notice of the lands to be sold and the minimum price at which the municipality will sell. Those who read the public notice, and particularly the residents and taxpayers of the municipality, have a right to rely upon its terms. To allow the municipality to convey more land than was advertised for sale would be to give the successful bidder a greater advantage than those who might have become interested in the sale and bid thereat had they known that a larger tract would eventually be conveyed."
See, also, Ingannamort v. City of Hackensack, 134 N.J.L. 103 (Sup. Ct. 1946).
A municipality has only such powers as are given it by the Legislature, Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72 (1953); Camden Plaza Parking v. City of Camden, 16 N.J. 150 (1954). The Legislature has given to municipalities the power to restrict the use of land which they may sell and convey pursuant to statute, but the Legislature has not given the power to waive any restriction which a municipality has imposed on the land as a condition *297 of its sale after the land has been sold and conveyed. The power which a municipal corporation is authorized to exercise is intended for the common good of the inhabitants of the municipality, and not for the particular advantage of one individual. For this reason, any exercise of power must serve a public purpose in order to be legal. Consequently, the legislative policy is to control and limit the power granted to local governing bodies in order to prevent public fraud and favoritism, Waszen v. City of Atlantic City, 1 N.J. 272 (1949). If a municipal governing body could waive a restriction which it imposed on land as a condition of its sale after its sale and conveyance, the door would be wide open for fraud and favoritism.
For the above reasons, the judgment here under review is reversed and the case is remanded.