166 N.J. Super. 476 (1979)
400 A.2d 95
BOARD OF RECREATION COMMISSIONERS OF THE BOROUGH OF RUTHERFORD, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF RUTHERFORD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 21, 1979.
Decided March 7, 1979.
*477 Before Judges LYNCH and CRANE, with Judge HORN participating in the decision.
Mr. Thomas H. Sullivan argued the cause for appellant (Mr. James S. Ely, Jr., attorney).
*478 Mr. Joseph L. Freiman argued the cause for respondent.
PER CURIAM.
The issue in this case is whether a municipal governing body which has created a Board of Recreation Commissioners pursuant to N.J.S.A. 40:12-1 et seq. may abolish said Board.
The matter arose on the basis of the following history. On April 2, 1974 the Borough of Rutherford (borough) established by ordinance (Ordinance Code Chapter 83) a Board of Recreation Commissioners (Commission) and invested it with the powers "conferred upon [it] by Sections 40:12-1 to 15 inclusive of the Revised Statutes of the State of New Jersey."
Section 83-5 of said ordinance provided that the Commission shall "formulate plans for the development and improvement of Harold Wall Field, Tamblyn Field, Memorial Park and all structures thereon now or hereafter owned by the borough and all recreational programs," and shall "formulate rules and regulations for the public use of Harold Wall Field, Tamblyn Field, Memorial Park and all structures thereon, and the improvements thereof and all recreational programs * * *." The borough admits that the ordinance by inference seems to vest the Commission with the control of the three primary parks of the borough, including Memorial Park.
In June 1977 the borough became aware that federal funds would be available to it and determined to apply a portion of those funds to construct a municipal swimming pool in Memorial Park. On November 1, 1977 the Commission formally notified the mayor and council that it did not approve of the proposed pool. Subsequently, on November 15, 1977 the Commission filed a complaint in lieu of prerogative writs, seeking a court ruling that it had exclusive control over the park lands and also an injunction against the borough, restraining it from constructing the pool. On December 2, 1977 the trial judge decided that the Commission had "full, sole and exclusive control of the lands *479 transferred to its jurisdiction" by the ordinance formally establishing a Commission, and enjoined the borough from constructing a swimming pool in a park under the control of the Commission.
On December 20, 1977 the borough enacted the ordinance which is the subject matter of this appeal. That ordinance, passed unanimously, purported to abolish the Commission and establish in its place a Department of Recreation. The Commission then filed the instant complaint against the borough, seeking a declaration that the ordinance abolishing the Commission was null and void, and an injunction from interfering with the Commission in the performance of its powers under the ordinance creating it. Following an evidential hearing the same trial judge delivered an oral opinion in which he stated:
* * * [T]he action of the governing body of the Borough of Rutherford in purporting to abolish the Board of Recreation Commissioners was, in fact, arbitrary, capricious and unreasonable and it was taken for the sole purpose of avoiding the restraints heretofore imposed by this Court in order to justify the construction of a controversial swimming pool in the Borough of Rutherford without the consent of the Board of Recreation Commissioners and contrary to the expressed will of the citizens of the Borough as evidenced by their defeat in four separate referenda [concerning pool construction] * * *.
The judge acknowledged in his own words:
* * * [T]he power to pass an ordinance includes the power to repeal or amend it. The right to repeal an ordinance is a general power which exists by reason of the right to pass ordinances. Upper Penns Neck Township v. Lower Penns Neck Township, 20 N.J. Super. 280, Law Division case of 1952, and stated in many other cases that I am not quoting at this particular time as authority for the general type of ordinance.
Notwithstanding this understanding of the law, he felt that legally the borough could not adopt an ordinance abolishing the Commission if the ordinance "was passed in bad faith for the sole purpose of overcoming * * * the resistance of the *480 [Commission] to the proposal of the governing body to construct [the] swimming pool." On the basis of "bad faith" only, and without a determination of the legal issue of the right of the governing body to abolish the Commission (notwithstanding an earlier statement to the contrary), the judge set aside the ordinance abolishing the Commission as being "arbitrary, capricious and unreasonable."
In the absence of a contraindicated legislative intent, it may be said to be a general rule that, as first stated by the trial judge, the power to pass an ordinance inherently includes therein the power to repeal it. Stemmler v. Madison, 82 N.J.L. 596, 597 (E. & A. 1911); Upper Penns Neck Tp. v. Lower Penns Neck Tp., 20 N.J. Super. 280, 285; 6 McQuillin, Municipal Corporations (3 ed. 1969), § 21.10 at 206. Cf. N.J.S.A. 40:48-1 and 2, expressly authorizing the repeal of the type of ordinances covered therein.
It is also a general rule that where a franchise right or privilege has been acquired from a municipality, the ordinance granting it cannot be repealed, at least without due process of law. Phillipsburg Electric Co. v. Phillipsburg, 66 N.J.L. 505 (Sup. Ct. 1901); 6 McQuillin, op. cit., § 21.16 at 216. Thus, by analogy the right of a municipal body to repeal an ordinance creating an authority, commission or other body would be limited, if not lost, if the body during its existence had entered into legal contracts or granted legal franchises which would be either impaired or disavowed if the body were abolished.
Nor may a governing body repeal an ordinance which was "enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time prescribed by the legislature." Beyer v. Mt. Holly Tp. Comm, 6 N.J. Super. 409, 411 (Law Div. 1949). See also, Stemmler v. Madison, supra; Ringwood Solid Waste Manage. Auth. v. Ringwood, 131 N.J. Super. 61 (Law Div. 1974); 6 McQuillin, op. cit., § 21.10 at 207.
In the light of the foregoing, we turn to N.J.S.A. 40:12-1 et seq., the statutory enactment which authorized the *481 creation of the Commission. We observe that, although the borough created the Commission by means of an ordinance, the statute, N.J.S.A. 40:12-1, provides that "[t]he mayor or other chief executive officer of any municipality * * * may in his * * * discretion appoint * * * members of a board of recreation commissioners." (Italics supplied). A review of the remaining sections of the statute makes it eminently clear that the Commission is to act as an arm of the municipality. It may act, for example, to acquire title to land for playground and recreation purposes, but the money for same must be appropriated by the governing body of the municipality and the title must vest in the municipality. N.J.S.A. 40:12-3 and 4.
And, while the Commission may arrange and provide for the giving of exhibitions, plays and other forms of entertainment "[i]n order to provide the funds" necessary to improve, maintain and police the areas under its control; may appoint personnel for the purpose of preserving order and observance of the rules and regulations of the Commission, and may determine the salaries of its appointees, N.J.S.A. 40:12-5 and 6, the governing body of the municipality is required to appropriate the moneys needed by the Commission for the stated purposes and to provide offices for the members of the Commission. N.J.S.A. 40:12-7. Such moneys as are received by the Commission must be paid over to the municipal treasurer, to be kept by the latter in a special fund for the purpose of defraying the expense incurred for "improving, maintaining or policing" the areas in the control of the Board, N.J.S.A. 40:12-8.
In effect, not only does the legislative scheme evince an intention that the Commission act as a department of the municipality, but it appears that the Commission is incapable of entering into any contracts or granting any substantial franchises which could be impaired by the act of the municipality in dissolving the Commission.
It may also be noted that the Commission is not constituted a body politic or corporate, as in the case of other *482 legislatively created bodies. Cf. Ringwood Solid Waste Managem. Auth. v. Ringwood, supra 131 N.J. at 70. Judge (now Justice) Pashman in Dumont v. Caruth, 123 N.J. Super. 331 (Mun. Ct. Dumont, 1973), expressed the function of such boards accurately when he observed:
* * * The Legislature clearly intended to allow the municipalities, through their boards of recreation commissioners [emphasis added], to regulate the "use" of parks as well as [emphasis not added] conduct while using them. [123 N.J. Super. at 335]
This exhibits a clear interpretation that it is the municipality that controls, rather than the Commission, and that the actions of the Commission are merely extensions of the jurisdiction of the Borough's governing body.
As already noted, the trial judge in the instant case decided the issue almost solely on the "bad faith" of the borough's governing body. In effect, the judge drew an inference of bad faith on the part of the borough's commissioners simply because they disagreed with the policy of the Commission and determined to take such legal steps as to enable the borough to implement its policy as to the swimming pool. We do not agree that such difference of opinion exhibits bad faith on the part of the governing body or the members of the Commission. If the borough had the right to set the policy, as we believe it did if the Commission was in fact only an arm of the borough, its actions in taking steps to enforce its policy against the recalcitrance of the Commission members are not acts of bad faith.
In any event, "the courts will not inquire into the motives of legislators (or municipal governing bodies) in passing or doing an act where the legislators (or members of the municipal governing body) possess the power to pass or do the act and where they exercise that power in a mode prescribed or authorized by the organic law." 5 McQuillin, op. cit., § 16.90 at 287. As stated in Kozesnik v. Montgomery Tp., 24 N.J. 154 (1957):
*483 * * * The wisdom of legislative action is reviewable only at the polls. The judicial role is tightly circumscribed. We may act only if the presumption in favor of the ordinance is overcome by a clear showing that it is arbitrary and unreasonable. [at 167]
See also Hudson Circle Servicenter v. Kearny, 70 N.J. 289, 298 (1976); Ward v. Montgomery Tp., 28 N.J. 529, 539 (1959). "The wisdom of a municipal ordinance is not a matter of judicial concern." Gold v. Trenton City Council, 121 N.J. Super. 137, 141 (App. Div. 1972).
Finding, as we do, that the borough acted within its legislative prerogative in repealing the ordinance which created the Commission, the judgment entered in the trial division is reversed.