ANTHONY R. CUCCI AND LAWRENCE ECCLESTON, PLAINTIFFS, v. NICHOLAS INTROCASO, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided May 20, 1986.

*James J. Tutak,* Esq., appearing for the Plaintiffs.

*Joseph Healy,* Esq., *Dennis McAlevy,* Esq., *Victor F. De-Vito,* Esq., *Richard C. Vaughan,* Esq., *Brian Kennedy,* Esq., appearing for the Defendants.

HUMPHREYS, A.J.S.C.

This litigation was spawned in a bitter battle in June 1985 for the office of mayor of Jersey City. The incumbent Mayor Gerald McCann lost the election. After the election but before incoming Mayor Anthony Cucci took office, Mayor McCann appointed a large number of people to various municipal offices and positions. Mayor Cucci has brought this action seeking to have these "lame duck" appointments declared invalid. His major ground is that Mayor McCann's motives in making the appointments were wrongful and malicious.[1]

All parties have moved for summary judgment. The court finds that no genuine issue of fact is present and that the appointments were lawfully made. Defendants' motions for summary judgment are therefore granted. The court's reasons are as follows.

The Jersey City Municipal Council met on June 13, 1985, two days after the election. The published agenda for the meeting contained the following item: "Appointment of two Housing Authority Commissioners and other autonomous agencies." Nevertheless, at the meeting resolutions were introduced to approve some 22 appointments to such positions as the Housing Authority, Sewerage Authority, Board of Adjustment, Rent Leveling Board, Planning Board, Alcoholic Beverage Commission, Municipal Court and Board of School Estimate. Those appointed were supporters of Mayor McCann, including his brother. The resolutions were adopted amid much turmoil. The appointments were presented again and approved at a subsequent meeting of the Council held on June 24, 1985.

Plaintiffs contend that Mayor McCann and his council supporters bore the incoming administration a "great deal of ill will and malice." (Mayor Cucci's Certification para. 10.) Mayor Cucci contends that his offices were vandalized, vital records

---

[1] This opinion is a refinement of an oral opinion. Other issues dealt with in the court's oral opinion are omitted in the interest of brevity.

were destroyed, and the outgoing administration failed completely to cooperate in the transition between the two administrations. He argues that the post election appointments were part of a "continuing effort to obstruct and interfere with my administration's coming into power...." (Mayor Cucci's Certification para. 16(e); *see* other Certifications filed on behalf of plaintiffs and see the responding Certification of former Mayor McCann.)

▪ In the absence of legislation to the contrary, a "lame duck" mayor and council may make and approve appointments before the new administration takes office. *See Bakely v. Nowrey,* 68 *N.J.L.* 95, 52 *A.* 289 (Sup.Ct.1902) aff'd. 68 *N.J.L.* 732, 54 *A.* 833 (E. & A.1903); *Thomas v. Mc Grath,* 145 *N.J.Super.* 288, 293 (App.Div.1976); *Georgia v. Suruda,* 154 *N.J.Super.* 439, 446 (Law Div.1977); 2 *McQuillin Mun. Corp.* (3 ed. Rev.1979), § 10.35 *et seq.*

For an outgoing administration to make such appointments may be unwise public policy; however, the practice has a long history in the United States. In the closing days of his term, President John Adams appointed 50 Federal judges. Supporters of the incoming administration of President Thomas Jefferson complained that these "midnight" appointments would provide "sinecure places and pensions for the thorough-going federalist partisans." As predicted, President Adams' appointments were "all right-thinking federalists". *See* Bernard Schwartz, *American Heritage History of the Law in America,* 54 (1974).

Here, too, the incoming administration contends that Mayor McCann was motivated by a desire to reward his supporters. However, the law is settled that courts will not inquire into what motivated public officials in making and approving appointments, provided that the officials had the power to so act and exercised that power in accordance with law. *See Bd. of Rec. Comm'rs., Rutherford v. Rutherford,* 166 *N.J.Super.* 476,

482 (App.Div.1979); 5 *McQuillin Mun. Corp.* (3 ed. Rev.1981), § 16.90 at 266.

The wisdom of acts by public officials are reviewable by the people on election day. The reviewing authority of judges has a much narrower reach. *See Kozesnik v. Montgomery Tp.*, 24 *N.J.* 154, 167 (1957).

The limited authority of the court in such cases was well stated in *Grogan v. DeSapio*, 15 *N.J.Super.* 604, 611–612 (Law Div.1951). In that case Judge Hartshorne said:

Courts exist solely to declare and enforce the law, and are without authority as to matters of mere governmental policy. Hence, all personal or political maneuvering, which complies with the law, in substance as well as in form, is beyond the authority of the courts to control. Thus if, because of either personal or political motives, officials fail to take the course of action best suited to the public interest, but take a course less beneficial to the public, yet, if the action taken was both in fact and in form in accord with the law, the remedy available to the citizens for the failure to take the best course lies, not with the courts, but at the polls.

On the other hand, if officials violate the law either in substance or in form, the courts are available for a remedy. This is so whether such violation was due to personal or political maneuvering, to bad faith, to an abuse of discretion, or for other cause. Such possible motives indeed are evidential, in corroboration of the claim that the action taken was in fact in violation of the law. *Ibid.*

In *Marbury v. Madison*, 5 *U.S.* (1 *Cranch*) 87, 2 *L.Ed.* 60 (1803), Chief Justice Marshall stated:

The province of the court is, solely, to decide on the rights of individuals, not to inquire how the executive, or executive officers, perform duties in which they have a discretion. Questions in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.

Here the actions taken by Mayor McCann and the Jersey City Council were in accordance with law. The meeting of June 13 was unruly and tempestuous. A reading of the transcript leaves in doubt which faction was more responsible for the disorder. The subsequent council meeting on June 24, however, appears to have been orderly. By then the council had sufficient time to consider, deliberate and vote on the appointments. The action taken by the council at its June 24 meeting complied with all legal requirements and is unassailable.

■ Furthermore, despite the opportunity for discovery, plaintiffs have not established or even specifically charged any fraud, corruption or personal interest on the part of Mayor McCann. Such charges would afford a basis for judicial review. *See American Grocery Co. v. New Brunswick,* 124 *N.J.L.* 293, 297 (Sup.Ct.1940) aff'd. 126 *N.J.L.* 367 (E. & A.1941). *See also Clark v. Landis Tp.,* 126 *N.J.L.* 371 (Sup.Ct. 1941); *Reimer v. Allendale,* 123 *N.J.L.* 563 (Sup.Ct.1939); 2 *McQuillin supra,* § 10.37; *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N.J.* 433 (1952); *Grogan v. DeSapio,* 15 *N.J.Super.* 604 (1951); *LaRue v. E. Brunswick,* 68 *N.J.Super.* 435 (App.Div.1961); *Kirzenbaum v. Paulus,* 57 *N.J.Super.* 80, 84 (App.Div.1959). However, as was stated in *Reimer, supra,* 123 *N.J.L.* at 567, "the motives of those entrusted with such governmental power, proceeding within the allotted sphere of action, are not lightly to be categorized as evil in the legal sense."

■ Plaintiffs' position fairly put is that the outgoing administration acted out of partisan political motives not motives which were venal or otherwise "evil in the legal sense". To set aside legally authorized appointments on the basis of improper political motives would enmesh the courts in factional political controversy. In becoming the arbiters of political strife, the courts would lose their neutral status as the upholders of the law. *See Deamer v. Jones,* 42 *N.J.* 516, 521 (1964).

In sum, the Jersey City mayor and council, in making and approving the appointments, acted within their authority and complied with all legal requirements. Under such circumstances courts lack the power to set aside the appointments on the ground that the appointing and confirming public officials were motivated by partisan political considerations. If the appointing authority of "lame duck" municipal officials is to be curtailed, then the Legislature is the proper forum. Defendants' motion for summary judgment is granted.