91 A.3d 35

SALEM COUNTY IMPROVEMENT AUTHORITY, PLAINTIFF,
v. SALEM COUNTY BOARD OF CHOSEN
FREEHOLDERS, DEFENDANT.

Superior Court of New Jersey
Law Division
Salem County

Decided January 30, 2014.

*Adam I. Telsey* for plaintiff (*Puma, Telsey & Rhea, P.A.,* attorneys).

*Michael M. Mulligan* for defendant.

CURIO, A.J.S.C.

Plaintiff has filed an action in lieu of prerogative writs seeking an order invalidating the Salem County Freeholder Board's (the "Board") partial veto of the November 25, 2013, meeting minutes of the Salem County Improvement Authority ("SCIA").

On November 25, 2013, the SCIA awarded professional services contracts for the year 2014. SCIA voted unanimously on the resolutions to hire multiple professionals, including an engineer, solicitor, financial advisor, bond counsel, economic development consultant, and others; they voted three-to-one on the resolution to hire an auditor. Freeholder director Julie Acton and deputy director Dale Cross were in attendance at SCIA's November 25, 2013, meeting at which the contracts in dispute were awarded. During public comment, Acton inquired as to the timing for awarding the contracts. Cross had made the same inquiry the previous year, suggesting that such contracts should be awarded at SCIA's reorganization meeting in February.

The November 25, 2013, SCIA meeting minutes were delivered to the clerk of the Freeholder Board on December 2, 2013, in the same manner and within the same time frame as prior meeting

minutes had been submitted for consideration pursuant to *N.J.S.A.* 40:37A–50(e).[1] The meeting minutes were then hand-delivered to the freeholders on December 3, 2013. On December 4, 2013, Acton, in writing, vetoed "all SCIA resolutions for professional services appointments to terms spanning past December 31, 2013." At the December 4, 2013, Board meeting, that veto was approved by majority vote and memorialized by Resolution 558.

> *N.J.S.A.* 40:37A–50(e) provides:
>
> The minutes of every meeting of an authority ... shall be delivered by the end of the fifth business day following the meeting, by and under the certification of the secretary of the authority to each member of the county board of freeholders. No action taken at a meeting by the members of an authority shall be effective if within 10 days after the copy of the minutes shall have been delivered to each member of the board of freeholders, such action is vetoed by the director of the board of freeholders, with the concurrence of a majority of the members of the board of freeholders. If, within the 10–day period, the board of freeholders returns to the authority the copy of the minutes with a veto of any action taken by the authority or any of the authority's members thereof at a meeting, that action shall be of no effect. If the director takes no action with respect to the minutes within the 10–day period, the minutes shall be deemed to be approved.... The veto power accorded under this subsection shall not affect in any way the covenants contained in the bond indentures of the authority, or any collective bargaining agreement or binding arbitration decisions affecting employees of the authority.

Despite defendant's argument that it is only the action of Acton that is before the court for review, it is the action of the Board in confirming the director's veto that gives the veto its effect and renders the authority action to "be of no effect." Accordingly, the court here also reviews the action of the Board in confirming the veto.

The standard and burden that a plaintiff must overcome in an action in lieu of prerogative writs is substantial. When a reviewing court considers an appeal of an action taken by a governing body, the standard by which it is guided is whether the action taken was arbitrary, capricious, or unreasonable. *Cell S. of N.J. v. Zoning Bd. of Adj.*, 172 *N.J.* 75, 81–82, 796 *A.*2d 247 (2002);

---

[1] As evidenced by the clerk's date stamp, the November 25, 2013, SCIA meeting minutes were delivered to the Board on December 2, 2013, at 4:16 p.m.

*Burbridge v. Mine Hill Twp.*, 117 *N.J.* 376, 385, 568 *A.*2d 527 (1990). The determinations made by the Board are presumed valid as is the exercise of its decision-making, based upon its factual determinations, and will not be overturned unless they are arbitrary, capricious, or unreasonable. Plaintiff bears this burden of proof. *Cell, supra,* 172 *N.J.* at 82, 796 *A.*2d 247.

Judicial review is intended to be a determination of the validity of the agency's action, not the substitution of the court's judgment for that of the agency. *Ne. Towers, Inc. v. Zoning Bd. of Adj.*, 327 *N.J.Super.* 476, 493, 744 *A.*2d 190 (App.Div.2000). The reviewing court must determine whether the board below followed the statutory guidelines and properly exercised its discretion within those guidelines or whether its decision amounts to an abuse of discretion. *Burbridge, supra,* 117 *N.J.* at 398, 568 *A.*2d 527. However, while a court is to "give substantial deference to findings of fact, it is essential that the board's actions be grounded in evidence in the record." *Fallone Prop., L.L.C. v. Bethlehem Twp. Planning Bd.*, 369 *N.J.Super.* 552, 562, 849 *A.*2d 1117 (App.Div.2004). The Appellate Division has emphasized that "[a] determination predicated on unsupported findings is the essence of arbitrary and capricious action." *DeFalco Instant Towing, Inc. v. Borough of New Providence,* 380 *N.J.Super.* 152, 158, 881 *A.*2d 745 (2005) (*quoting Bryant v. City of Atl. City,* 309 *N.J.Super.* 596, 610, 707 *A.*2d 1072 (App.Div.1998)).

Since there is a presumption of validity of a local action, SCIA bears the burden of demonstrating the existence of a "clear abuse of discretion." *Cell, supra,* 172 *N.J.* at 81–82, 796 *A.*2d 247. The issue becomes whether the decision of the governing body is supported by the record and is "not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion." *New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adj.*, 160 *N.J.* 1, 14, 733 *A.*2d 442 (1999) (*quoting Smart SMR v. Borough of Fair Lawn Bd. of Adj.,* 152 *N.J.* 309, 327, 704 *A.*2d 1271 (1998); *Sica v. Bd. of Adj.,* 127 *N.J.* 152, 166–67, 603 *A.*2d 30 (1992)).

A trial court's review of a local governing body's decision is limited. *R.* 4:69 comment 5.2. "[T]he agency's action is presumed valid and reversible only if arbitrary, capricious or unreasonable." *Ibid.*

Plaintiff does not dispute that the Board had the authority to veto the SCIA minutes. *N.J.S.A.* 40:37A–50(e). Plaintiff contends that the veto occurred for no reason, for insufficient reasons, or for improper reasons.

The December 4, 2013, Board meeting transcript reveals that the following reasons were proffered for the veto:

*Reason # 1:* The delivery of the minutes on December 2, 2013, at 4:16 PM precluded the freeholders from having sufficient time to review the minutes and issues raised by the award of professional services contracts,

*Reason # 2:* The award of professional contracts was invalid and illegal in that the responses to the Request for Proposals were due on a holiday in violation of *N.J.S.A.* 40A:11–23(a) and/or *N.J.S.A.* 19:44A–20.4, and

*Reason # 3:* The awarding of professional contracts at SCIA's November 25, 2013, meeting was inappropriate in that it is preferable to award such contracts at SCIA's annual reorganization meeting in February 2014.

Acton commented as follows at the December 4, 2013, Board meeting:

FREEHOLDER DIRECTOR ACTON: . . . [W]e just received the minutes yesterday [December 3, 2013]. So, you can't really do anything without receiving the minutes. As soon as our Clerk Pennington sent them to me, reviewed them and questioned why they were going to approve—award Professional Services contracts when reorganization is not until February.

There's also a little glitch because they awarded them on a holiday which was November 6th, and, and that is the day after election and that's considered a holiday. So, I don't think it would be in our best interest to even approve these minutes without those two different issues.

Further comments were provided by other freeholders:

FREEHOLDER LAURY: I vote to veto the minutes also. We need more information also. We don't have a lot of information and we need to get evidence Monday, before our first meeting. So, we can take it right to the 18th because then we don't have this opportunity.

FREEHOLDER BOBBIT: Opportunity for what?

FREEHOLDER LAURY: Opportunity to veto the minutes. It has to be done within 10 days. So, we got the minutes—we got the minutes yesterday. That gives us today. That doesn't give us till next meeting.

FREEHOLDER BOBBIT: Did you have enough time to review them and look over them?

FREEHOLDER LAURY: We need more information. So, that's why I'm going to vote—I'm, going to vote to veto the minutes.

A review of these proffered reasons is in order in assessing the Board's action.

■ The freeholders' concern regarding the alleged violation of the Local Public Contract Law, *N.J.S.A.* 40A:11–23 to –23.5, is misplaced. *N.J.S.A.* 40A:11–23(a) provides that contracts shall not be due on a Monday, or any day directly following a State or federal holiday. *N.J.S.A.* 40A:11–23(a). The contracts were due November 6, 2013, while November 5, 2013, was a New Jersey state holiday (Election Day). However, contracts for professional services are exempt from the Local Public Contracts Law procedural requirements for public bidding. *N.J.S.A.* 40A:11–5. *See Clean Earth Dredging Techs., Inc. v. Hudson Cnty. Improvement Auth.*, 379 *N.J.Super.* 261, 268, 877 *A*.2d 363 (App.Div.2005).

■ The Improvement Authority obtained a written opinion from outside counsel indicating the foregoing on December 3, 2013. A copy of same was provided to Acton on December 4, 2013. Although the ultimate legal principle is not now disputed by the parties, it is not unreasonable for the freeholders to have needed or wanted additional time to reflect on this issue and to digest outside counsel's lengthy opinion letter with multiple attachments. Their desire to do so does not amount to an abuse of discretion.

■ The Board's reason that the professional services contracts must be awarded by SCIA at its annual reorganization meeting in February 2014 merits consideration. SCIA switched to its current operating calendar in response to an audit, and it was required to do so in order to join the Statewide Joint Insurance Fund ("JIF"), all of which was approved by the Board. Cross was in attendance at the August 26, 2013, SCIA meeting and made no objection to SCIA's joining of the JIF, which required "[a]ll resolutions, including the Risk Management Consultant have to be

redone annually before January 1 due to the fact that the State-wide JIF runs on a calendar year basis." Acton approved the minutes of the August 26, 2013, SCIA meeting by allowing the ten-day veto period to lapse.

Acton knew the contracts were going to be awarded earlier than the February reorganization upon her review of SCIA's September 23, 2013, minutes, which she did not veto. Awarding contracts in this fashion is common practice among other, though not all, improvement authorities and has been the practice of SCIA for the past two years. The Board did not lodge any formal objection to the practice during either of those prior years and did not veto those prior minutes.[2] Plaintiff does not argue that the failure to veto those prior minutes estops the Board from doing so now, instead arguing that this fact is evidence of arbitrariness. The authority maintains that it is independent and can set its own timeframe without being micromanaged or dictated to by the freeholder director or Board. The foregoing arguments explain the reasons for the Authority's decision, but they do not overcome the statutory right to veto. The Board's rejection of SCIA's decision as to when to award contracts does not amount to an abuse of discretion. It is the kind of oversight contemplated by the statute.

 The Board also based its decision to veto upon the need to act before expiration of the statutorily imposed ten-day period. In other words, if the ten days lapsed without action, the minutes would be automatically approved. In order to preserve their right and authority, the Board had to act or be forever barred. Plaintiff argues that the freeholder director and the freeholders were aware of these issues much before the November 25, 2013, minutes were submitted for review and the contracts were awarded.

---

[2] Interestingly, though, at the SCIA December 17, 2012, meeting, during the public portion, John Evans asked why some appointments were not held until February reorganization. Chairman Ober stated that this was SCIA practice, and coverage was needed between January 1 and reorganization.

Therefore, the claimed need for more time is a red herring. But since inaction within the prescribed timeframe is a bar to future action, it is not unreasonable for the freeholders to act promptly to preserve their right. Even assuming Acton knew an issue was likely to arise, she could not veto it before she received the minutes. Knowing that an issue might or is likely to arise does not alter the veto authority or process.

In addition to the reasons articulated on the record, Acton has certified that she was also motivated by a desire to undo lame duck appointments. "At common law the well-recognized rule was that an official empowered to appoint a public officer may not forestall the rights and obligations of his successor by making an appointment where the term of the appointee will not take effect until after the expiration of the term of the appointing officer." *Georgia v. Suruda,* 154 *N.J.Super.* 439, 448, 381 *A.*2d 821 (Ch.Div. 1977). Even when the outgoing board has the power, "for an outgoing administration to make such appointments may be unwise public policy." *Cucci v. Introcaso,* 218 *N.J.Super.* 421, 424, 527 *A.*2d 960 (Law Div.1986).

Lame duck appointments are not per se illegal, although considered "unwise." Typically, courts will not inquire into what motivated public officials in making and approving appointments, provided that the officials had the power to so act and exercised that power in accordance with law. *See Bd. of Recreation Comm'rs of Rutherford v. Rutherford,* 166 *N.J.Super.* 476, 482, 400 *A.*2d 95 (App.Div.1979).

The persuasive effect, if any, attributed to the lame duck argument, is diminished by the fact that this is not a true lame duck situation with only one member of the authority changing and the votes at issue are nearly unanimous.

Moreover, because review of a governmental action is based on the record, this proffered reason is not properly before the court.

Nevertheless, this general proposition is subsumed in the Board's argument that the contracts should be awarded at the reorganization meeting.

Since no New Jersey published decision has addressed a veto in this context, a review of the statute's legislative history is instructive. The statute in question is entitled, "[a]n Act concerning the *power of the director of the board of freeholders over county authorities* . . . ." *S.* 763, 214th Leg. (2010) (emphasis added). *N.J.S.A.* 40:37A–50(e) was added as an amendment to the original statute. Added in 2010, the legislative history states that the purpose was to "authorize the director of the county board of freeholders which has not adopted the provisions of the "Optional County Charter Law," with the consent of a majority of the members of the board, to veto *any action* of a county authority." *Statement of Stephen M. Sweeney, Senate President* to *S.* 763, 214th Leg. (2010) (emphasis added).[3] In amending the statute, the Legislature essentially took the veto power established in *N.J.S.A.* 40:37A–50(b), which applies to those counties organized with a county executive, and made it applicable to a county governed by a freeholder board, such as Salem's.

*N.J.S.A.* 40:37A–50(b) (emphasis added), in pertinent part, states:

> If, within the 10–day period, the county executive returns to the authority and to the board of freeholders the copy of the minutes with a veto of any action taken by the authority or any member thereof at a meeting, *together with a written explanation of the reasons for his veto of the action,* that action shall be of no effect unless the board of freeholders overrides the veto of the action by a majority vote of its full membership within 10 days of the receipt of the veto action.

It is contrasted with the language of *N.J.S.A.* 40:37A–50(e), which provides:

---

[3] The Optional County Charter Law offers counties different ways to organize themselves (such as by the county executive plan, the county manager plan, the county supervisor plan or the board president plan). *N.J.S.A.* 40:41A–1 to –149.

If, within the 10–day period, the board of freeholders returns to the authority the copy of the minutes with a veto of any action taken by the authority or any of the authority's members thereof at a meeting, that action shall be of no effect.

The Legislature, in amending the statute to afford freeholders veto power, did not require the freeholder director or board to give a written explanation of the reasons for the veto. A veto may be subject to judicial review under the arbitrary, capricious, or unreasonable standard against which government actions are measured. But clearly the Legislature intended the freeholder board to have far reaching oversight over authorities and stated no limitations on the freeholder veto except specifically referencing in the next paragraph that no veto would affect bonds, collective bargaining agreements, or binding arbitration decisions.

As the New Jersey Supreme Court stated in *U.S. Sportsmen's Alliance Foundation v. New Jersey Department of Environmental Protection,* 182 *N.J.* 461, 469, 867 *A.*2d 1147 (2005) (*quoting Caminetti v. United States,* 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L.Ed.* 442, 452 (1917)), the starting point in interpreting a legislative enactment is always the language of the statute itself. If it is clear, "the sole function of the courts is to enforce it according to its terms."

Further, "where [a legislature] includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States,* 508 *U.S.* 200, 208, 113 *S.Ct.* 2035, 2040, 124 *L.Ed.*2d 118, 128 (1993) (*quoting Russello v. United States,* 464 *U.S.* 16, 23, 104 *S.Ct.* 296, 300, 78 *L.Ed.*2d 17, 24 (1983)).

▮ Since the statute provides the veto power in broad terms and with only those limitations specified, the freeholders' authority is expansive. It is presumed that if the Legislature wished to impose additional limitations on the powers of the freeholder director over county authorities, it would have expressly done so. Plaintiff points to no contrary authority demonstrating that the veto power given was restricted or limited in any fashion except as

expressly provided, none of which are implicated here.[4]

The burden is on SCIA to show that the Board's actions were arbitrary, capricious, or unreasonable. Plaintiff has failed to meet this burden. The Board's actions are presumed valid. Even though no reasons are required by statute, the Board proffered a reasonable explanation for the veto; it needed more time. The meeting minutes were given to all the Board members the day before the freeholder meeting. A relatively involved legal issue was raised. Added to this is the broad statutory authority to veto "any action."

Taking into account the presumption of validity that attaches to governmental actions and the considerable burden upon plaintiff, the court concludes that the director and Board did not act in an arbitrary, capricious, or unreasonable manner.

The reasons were stated on the record. The facts and time constraints bear out the Board's conclusion. Reasonable minds may differ as to whether the Authority's way or the Board's way is the "better" or "right" way, but the director's and the Board's veto does not amount to an abuse of discretion, nor does the veto exceed the authority given by the statute. Indeed, it is the type of oversight the Legislature intended the freeholder director and Board to have and to exercise. The court therefore will not disturb the director's veto, which was confirmed by the majority of the Board.

---

[4] The statute's only limitations are expressed as follows: "The veto power accorded under this subsection shall not affect in any way the covenants contained in the bond indentures of the authority, or any collective bargaining agreement or binding arbitration decisions affecting employees of the authority." *N.J.S.A.* 40:37A–50(e).