881 A.2d 745

DEFALCO INSTANT TOWING, INC., BERKELEY COLLISION, INC., AND RICARDO A. VEGA, A TAXPAYER, PLAINTIFFS–APPELLANTS, v. BOROUGH OF NEW PROVIDENCE, DEFENDANT–RESPONDENT, AND GELORMINI'S AUTO REPAIR AND TOWING, INC., AND AGK TOWING AND RECOVERY, INC., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted January 4, 2005—Decided September 8, 2005.

Before Judges STERN, COBURN and GRAVES.

*Harvey Fruchter and Associates,* attorneys for appellants (*Tejas S. Kapadia,* on the brief).

*Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein,* attorneys for respondent Borough of New Providence (*Carl R. Woodward, III,* and *Brian H. Fenlon,* on the brief).

The opinion of the court was delivered by

GRAVES, J.A.D.

In this case, we are called upon to evaluate the validity of an amendment to a towing ordinance adopted by the Borough of New

Providence (the Borough) on February 10, 2003, which gives preference to towing vendors who maintain a place of business within the Borough. Plaintiffs, DeFalco Instant Towing, Inc. (DeFalco), and Berkeley Collision, Inc. (Berkeley), towing vendors located outside of the Borough, and Ricardo A. Vega, a taxpayer, contend that the amendment is invalid because it is unlawfully discriminatory and exclusionary in violation of *N.J.S.A.* 40:48–2.49 and *N.J.S.A.* 40:11–3(1)(u). *N.J.S.A.* 40:48–2.49 authorizes a municipality to "regulate, by ordinance, the removal of motor vehicles from private or public property by operators engaged in such business," provided the ordinance sets forth "non-discriminatory and non-exclusionary regulations." *N.J.S.A.* 40A:11–5(1)(u) sets forth an exception to the public bidding requirement of the Local Public Contracts Law[1] for towing contracts, "provided that all such contracts shall be pursuant to reasonable non-exclusionary and non-discriminatory terms and conditions." The trial court concluded that "plaintiffs have not established that the Borough's decision was so egregious as to warrant judicial intervention." We disagree and reverse.[2]

The Borough Code provides that the local Police Chief is responsible for maintaining an on-call list of licensed towing services (towers) available to respond to calls from the Borough Police Department. To be placed on the on-call list, towers must demonstrate to the Chief of Police that they maintain appropriate drivers, equipment, storage facilities, and insurance, and they are subject to such additional rules and regulations as may be promulgated by the Chief of Police. The Chief of Police is also authorized to remove a tower from the on-call list if the tower "fails to respond within twenty (20) minutes or refuses to respond and does not perform on-call service."

---

[1] *N.J.S.A.* 10A:11–1 to –50.

[2] Counsel has advised us that "the Borough voluntarily held the implementation of [the towing ordinance] in abeyance," and that the amendment "has not been implemented to date."

Plaintiffs, DeFalco and Berkeley, had been responding to service calls from the on-call list for a number of years. In 2002, the on-call list contained the names of four towing companies: DeFalco, Berkeley, Gelormini Auto Repair and Towing, Inc. (Gelormini), and Benham's Garage. The right to be the primary responder to towing calls from the Borough Police Department rotated on a weekly basis among these four companies.

In a memorandum dated March 3, 2003, the Borough's Police Captain of Community Services, E.J. Catallo, advised all towing vendors of the adoption of an amended ordinance that "gives towing preference to towing vendors who maintain a place of business within the Borough." Attached to the memorandum was a new towing schedule for March through December 2003. The on-call list included three columns designated as: "Primary Tower," "Secondary Tower," and "Reserve Tower." AGK Towing and Recovery, Inc. (AGK), and Gelormini, the only two towers with businesses located in the Borough, were the only towers scheduled as primary towers. During the weeks when Gelormini was listed as the primary tower, AGK was listed as the secondary tower and vice versa. DeFalco, Berkeley, and Benham's (all located outside the Borough) were listed on the on-call list only as reserve towers. Captain Catallo's memorandum explained that these "[o]utside vendors will be called if the primary or secondary vendor cannot perform their duties for whatever reason."

The amended ordinance, with additions underlined, reads as follows:

It is hereby determined under the lawful exercise of the police powers of the Borough of New Providence that public convenience and necessity require that the persons performing towing service for the Borough of New Providence or called for by a member of the New Providence Police Department shall perform on an on-call basis from a list promulgated by the Chief of Police pursuant to this chapter. *Because the earliest possible response to a towing call is essential to the public health and safety, priority for on-call towing services shall be given to persons maintaining a place of business within the Borough of New Providence.*
[Emphasis added.]

We recognize that municipal ordinances, like statutes, are presumed to be valid and reasonable, and "[t]he burden of

proof to establish that they are arbitrary and unreasonable rests on the party seeking to overturn them." *Quick Chek Food Stores v. Tp. of Springfield,* 83 *N.J.* 438, 447, 416 *A.2d* 840 (1980) (citation omitted). *Accord 515 Assocs. v. City of Newark,* 132 *N.J.* 180, 185, 623 *A.2d* 1366 (1993). "Legislative bodies are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their enactments rest upon some rational basis within their knowledge and experience." *Hutton Park Gardens v. Town Council of Town of W. Orange,* 68 *N.J.* 543, 564–65, 350 *A.2d* 1 (1975) (citations omitted). "The underlying policy and wisdom of ordinances are the responsibility of the governing body, and if any state of facts may reasonably be conceived to justify the ordinance, it will not be set aside." *Quick Chek, supra,* 83 *N.J.* at 447, 416 *A.2d* 840 (internal citations omitted).

■ In the abstract, the stated purpose of the amendment, to provide "the earliest possible response to a towing call," seems rational and reasonable. Nevertheless, after examining the entire record, we conclude that plaintiffs have submitted ample proof, in the form of internal memoranda, minutes of a public hearing, and deposition testimony, to "preclude the possibility that there could have been any set of facts" known to the Mayor and Borough Council that would "rationally support a conclusion that the enactment [of the amended towing ordinance] is in the public interest." *Hutton Park Gardens, supra,* 68 *N.J.* at 565, 350 *A.2d* 1 (citations omitted).

The record reveals the following. In April 2002, the President of AGK and the President of Gelormini wrote a letter to the Mayor and Borough Council requesting that it enact an ordinance "to protect its business owners from outside vendors." Their letter, in pertinent part, reads as follows:

As you know, Mr. Kopin and I own and operate businesses that are located in New Providence. In fact, we are the only two towing businesses that are actually owned and operated in the Borough of New Providence and have our storage facilities in town. Over the last several years, it has become more and more difficult for us to conduct business in the surrounding towns. Both The Township

of Berkeley Heights and the City of Summit, have town ordinances which make it nearly impossible for us to be placed on their vendor lists. Their ordinances require that we own and operate a business in their towns in order to be on their vendor list. We are therefore seeking that the Borough of New Providence enact a similar ordinance to protect its business owners from outside vendors.

As business owners we contribute significantly to the tax base of New Providence. It is only fair that the Borough should protect and encourage our businesses. We are not asking for preferential treatment by any means. Rather, we are requesting that the Borough set the same standards to which we are subjected in other communities. Accordingly, any tow vendor interested in being placed on New Providence's towing vendor list would be required to own a business that operates in New Providence and have its storage facility in town. This would ensure that these other vendors have ties to our community and contribute to our town's well being.

Since we own, operate and have storage facilities in town we are able to respond to motor vehicles in less time. This also provides a benefit to our town residents, since we will be storing their vehicles in town where it is convenient for them and their vehicles are safeguarded. Furthermore, we are able to, if requested, tow vehicles directly to a resident's driveway if requested, without additional charge.

In a series of memoranda dated May 14, November 18, and November 22, 2002, the Borough's Chief of Police, Douglas Marvin, expressed a number of concerns regarding the towing ordinance amendment proposed by AGK and Gelormini, including the adequacy of storage facilities of the local towers, and the "ability to have tow vendors respond to all situations," especially the "ability to deal with heavy duty towing situations." Additionally, Chief Marvin advised the Mayor and members of the Borough Council: "As you know, our ordinance requires that tow venders respond to the scene within twenty (20) minutes of the call. Generally speaking, we have found that all of our tow vendors are able to fulfill this requirement." In his November 18, 2002, memorandum to the Mayor and Council, Chief Marvin stated:

I believe that reducing the number of tow vendors on our rotation list is not in the best interest of the community, the police department or the citizens. We have worked very successfully with four vendors rotating all on a weekly basis. This allows for overflow calls to be forwarded to the next person on the list and provides for adequate coverage in the case of an unusual event. Additionally, having one of our vendors (Benham's) with the ability to handle heavy-duty towing is essential in the event of that type of situation.

Despite the concerns expressed by its Chief of Police, the Borough Council approved the amended ordinance after conduct-

ing a public hearing on February 10, 2003. The minutes from that hearing confirm that "Council President Lifrieri explained that it was brought to their attention that this type of ordinance is in place in other communities" and that although "the Borough does not have any complaints with the towing services it has received in the past, Council only wanted to give preference to local vendors."

During his deposition, Chief Marvin estimated that DeFalco had been one of the Borough's tow vendors more than five years and Berkeley for more than ten years. He explained that both DeFalco and Berkeley are "less than five miles" away from the Borough and that the Borough is approximately "four square miles." Although all emergency towing for the Borough is coordinated through the police department, Chief Marvin asserted that the department did not initiate any request to change the towing ordinance. Chief Marvin did not recall receiving any complaints regarding towers exceeding the twenty-minute response time established by the Borough, and he testified that there was no need for the Borough to calculate mean response time for towing calls "because we had not received any complaints."

We emphasize that "[a] determination predicated on unsupported findings is the essence of arbitrary and capricious action." *Bryant v. City of Atlantic City,* 309 *N.J.Super.* 596, 610, 707 *A.*2d 1072 (App.Div.1998) (citations omitted). In this case, there is nothing in the record to demonstrate that the amended towing ordinance will actually reduce the response time for towing calls by giving preference to local towers or that it will otherwise promote or benefit the public health, safety, and welfare. *See N.J.S.A.* 40:48–2. On the contrary, the record fully supports plaintiffs' claim that "the Borough acted against the advice of their own police department to enact a system that ultimately sought only to protect its local business and economy," and the amended ordinance "amounts to nothing more than a thinly disguised attempt to bolster local businesses in the guise of an alleged faster response time."

Because the amendment to the ordinance is not rationally related to the objective sought to be attained—"the earliest possi-

ble response to a towing call"—and because the amended ordinance unfairly discriminates in favor of towing businesses located within the Borough, thereby violating *N.J.S.A.* 40:48–2.49 and *N.J.S.A.* 40A:11–5(1)(u), we hold that it is unlawful. *See Taxi's Inc. v. Borough of E. Rutherford,* 149 *N.J.Super.* 294, 313, 373 *A.*2d 717 (Law Div.1977) (invalidating an amended ordinance because "it unfairly discriminates in favor of local taxicab operators, as opposed to nonresidents, to the detriment of the total community"), *aff'd o.b.,* 164 *N.J.Super.* 160, 395 *A.*2d 912 (App.Div. 1978); 20 McQuillin, *Municipal Corporations* § 24.628 at 399 (3d ed., rev.vol.2001) ("Establishing a list of private towing firms to be called by police on a rotational basis and excluding nonresident towing concerns from the list" may be an invalid exercise of municipal regulation. (citation omitted)).

Reversed and remanded for entry of a judgment consistent with this opinion.