30 A.3d 367 (2011)
423 N.J. Super. 81
Victoria FAY, Plaintiff,
v.
MEDFORD TOWNSHIP COUNCIL, Medford Township, Stephen Addezio, Christopher Myers, David Brown, Robert Martin, Mark Sander, Defendants.
Docket No. C-24-11
Superior Court of New Jersey, Chancery Division, Burlington County.
Decided May 13, 2011.
*368 Holly Fusco, Trenton, for plaintiff.
John C. Gillespie, for defendants (Parker McCay, PA, Mount Laurel, attorneys).
HOGAN, P.J.Ch.
This decision addresses the complaint in lieu of prerogative writs filed on behalf of plaintiff Victoria Fay against the Medford Township Council and others. The instant action arises from Council's determination that plaintiff no longer resided in Medford Township and its declaration that her seat on the Council was therefore vacant pursuant to the Municipal Vacancy Law, N.J.S.A. § 40A:16-3. Briefs have been filed by both parties. Proof of service has been furnished. The court heard oral argument on Wednesday May 11, 2011.
The court now holds for the following reasons, the action taken by the Medford Township Council is affirmed and the counts in plaintiff's complaint comprising her action in lieu of prerogative writs are dismissed.

FACTS AND PROCEDURAL HISTORY
The complaint is somewhat wide ranging in its presentation. First, the complaint alleges that the Township Council acted arbitrarily, capriciously and unreasonably in its actions against plaintiff by voting to vacate her seat on the Council because of *369 its finding that she was no longer a resident domiciled in Medford Township pursuant to the Municipal Vacancy Law, N.J.S.A. § 40A:16-3. This statute states in relevant part:
The office of a mayor or a member of the governing body of a municipality shall be deemed vacant:
c. Upon a determination of the other members of the governing body that the mayor or a member of a governing body no longer resides within the corporate limits of a municipality or ward from which he was elected.
[N.J.S.A. § 40A:16-3(c).]
The complaint also provides counts for damages alleging a number of causes of actions which are not relevant to this decision. Plaintiff's original counsel misfiled this complaint in the Chancery Division as a prerogative writ action with additional counts for damages. However, the case should have been filed in the Law Division despite the fact that plaintiff was seeking injunctive relief in her prerogative writ count. The matter will be transferred to the Law Division and provided with a Law Division docket number. Nevertheless, the case will continue to be heard by this court as authorized by the Assignment Judge.
This case was first brought on February 18, 2011. It was brought by a verified complaint with an application for an order to show cause and sought a temporary restraining order pending the return day of the order to show cause. Plaintiff was seeking a temporary order reinstating her to her seat on the Township Council. It appeared that the Council on February 7, 2011, declared her seat vacated because they determined that she was no longer a resident of the Township. Her attorney argued that the process they used to arrive at that vote lacked any sense of order, was without reasonable notice to plaintiff, and was fundamentally unfair and violative of due process and thus was arbitrary, capricious and unreasonable.
At the hearing on the temporary restraint, the court found for the reasons set forth on the record that the Council had failed to create an adequate record for the action it took in attempting to remove plaintiff from her seat on the Council. Without restating the reasons put forth on the record and for purposes of this decision it is sufficient to say that the statute authorizing the Council to declare a seat vacated because of non-residency, required the Council to afford plaintiff with a basic due process hearing on notice to her, so that she could confront the allegations and be properly represented by counsel if she chose. Further, the Council should, following such hearing make appropriate findings of fact and conclusions of law supporting the reasons for its decision. In other words, a formal record needed to be created so that a reviewing court would have a record upon which to consider.
At the initial court hearing, it was obvious that the materials presented fell far short of creating a reviewable record. For example there was no certified transcript. There was no reliable record as to "what happened." Therefore, the order to show cause was not executed. The court remanded the case back to the Township Council to afford plaintiff a due process hearing on the statutory issue as to whether she was a resident of the Township.
In addition, the court restored the status quo ante following a review of the appropriate standards, and temporarily restored plaintiff to her seat on the Council. The court addressed the standards for injunctive relief and found that there would be substantial and immediate harm had the status quo not been restored. The court also reasoned that because of the lack of due process provided to plaintiff, she had *370 a probability of success on the merits. In balancing these factors, the court held the equities favored plaintiff at that early stage of the litigation.
Thereafter, on remand the Township Council provided plaintiff notice and conducted a formal hearing on March 14, 2011, wherein plaintiff was represented by counsel. At that hearing, the Township presented witnesses and certain documents. Plaintiff testified but presented no witnesses. After the hearing concluded, the Council reserved its decision.
On March 21, 2011, the Council met in public session and adopted a resolution and findings of fact and conclusions of law, finding that plaintiff was no longer a resident of the Township, and as per N.J.S.A. § 40A:16-3, her seat was vacated.
On April 11, 2011, following the remand hearing plaintiff, now through new counsel, Holly Fusco, attempted to file an amended complaint and order to show cause, again seeking temporary restraints, to restore plaintiff to her vacated seat or in the alternative to restrain the Council from filling plaintiff's seat. The court did not consider the amended complaint because of the Township's objection that it was not accompanied by a motion as per Rule 4:9-1.
As a practical matter, the amended complaint attempted to convert what was a prerogative writ action into solely an action under the declaratory judgment act. See N.J.S.A. § 2A:16-51. Otherwise, the damage claims were substantially the same as in the original complaint.
The court, however, entertained the injunctive relief application as part of the original complaint, now that the remand to the Council had been completed. The court reasoned that uncertainty as to the membership on the Township Council existed and the issue required a disposition in the public interest. The court found that the balance of the equities had changed since plaintiff was afforded an appropriate hearing on remand. Therefore, the court held that the standards for injunctive relief were not met and the court did not enjoin the Council from filling plaintiff's seat.
The court then directed both counsel to confer and confirm that the court had now been presented with the full record of the action, including the record of the remand to the Township Council, so that a proper review of the Township's actions under the prerogative writ count of the complaint could be accomplished in an expeditious matter. Both sides confirmed the record and made additional arguments by written submission. Oral argument was scheduled for April 27, 2011. Due to conflicts in schedules initially by defendants' counsel and then plaintiff's counsel, oral argument was heard on May 12, 2011.

DISCUSSION
Plaintiff's prerogative writ complaint consists of nine assorted counts. Counts three and eight request declaratory relief and specifically seek a determination that plaintiff is still a resident of Medford. It also alleges that it was an improper act of the Township Council to have removed the plaintiff from her seat on the Council.[1] The relief sought is for plaintiff to be reinstated to her position on the Township Council. The remaining counts are claims for various alleged wrongdoings, and on those counts plaintiff is seeking a variety of damages.[2] The court will only address *371 counts three and eight as these counts form the basis of plaintiff's prerogative writ action.

A. Standard of Review
The standard and burden that a plaintiff must overcome in an action in lieu of prerogative writs is formidable. When a reviewing court considers an appeal from an action taken by a governing body, the standard by which it is guided is whether the action taken was arbitrary, capricious or unreasonable. Cell South of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81-82, 796 A.2d 247 (2002); Burbridge v. Mine Hill Twp., 117 N.J. 376, 385, 568 A.2d 527 (1990). The factual determinations made by the board are presumed to be valid as well as the exercise of its decision making, based upon such determinations, will not be overturned unless they are arbitrary, capricious or unreasonable, and the burden of proof is upon the plaintiff. Cell, supra, 172 N.J. at 82, 796 A.2d 247.
Accordingly, judicial review is intended to be a determination of the validity of the agency's action, not the substitution of the court's judgment for that of the agency. Ne. Towers, Inc. v. Zoning Bd. of Adjustment, 327 N.J.Super. 476, 493, 744 A.2d 190 (App.Div.2000). The reviewing court must determine whether the board below followed the statutory guidelines and properly exercised its discretion within those guidelines or whether its decision amounts to an abuse of discretion. Burbridge, supra, 117 N.J. at 398, 568 A.2d 527. Thus, while a court is to "give substantial deference to findings of fact, it is essential that the board's actions be grounded in evidence in the record." Fallone Prop., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J.Super. 552, 562, 849 A.2d 1117 (App.Div.2004). The Appellate Division has emphasized that "[a] determination predicated on unsupported findings is the essence of arbitrary and capricious action." DeFalco Instant Towing, Inc. v. Borough of New Providence, 380 N.J.Super. 152, 881 A.2d 745 (2005) citing Bryant v. City of Atlantic City, 309 N.J.Super. 596, 610, 707 A.2d 1072 (App.Div.1998).

B. Analysis
A review of the record submitted shows that the material facts are not in dispute. Plaintiff, because of a marital dispute which resulted in a divorce being filed, determined that it was in her best interest and that of her son to vacate the marital home of seventeen years which is located in Medford. Because of this marital dispute, she alleges that she had no place to go, and had no income, so as a last resort she relocated temporarily to a condominium unit that her husband owned, and which was unoccupied. This unit is located in Evesham Township, which adjoins Medford Township. She testified that this move occurred on or about November 12, 2010. Her testimony at the hearing is that her decision to move out of the marital home was influenced by the intense and heated dispute with her husband.
A Medford police officer, Philip D'Alonzo, testified that his home is located in the vicinity of the Evesham unit, and that he observed plaintiff regularly at the unit and in the neighborhood from the time period starting in August 2010. Plaintiff has consistently stated that her relocation in Evesham was out of necessity, that it was temporary, and that her intended domicile was and is Medford Township at the marital home, since this had been her home for many years and she had no intent to leave. *372 When asked at the hearing why she did not take up offers by others living in Medford to allow her to stay with them, her response was that she did not want to bother them with her problems.
While this case was pending and after the remand hearing, Judge Cook of the Family Division issued an order on April 29, 2011, in the divorce action, which awarded exclusive possession of the marital home to Lawrence Fay, plaintiff's husband. He found that plaintiff vacated the marital home on November 12, 2010. Judge Cook also denied plaintiff's husband's motion to bar plaintiff from "entry" to 11 South Main Street, in Medford. He found that the address is the former location of "one of the parties delicatessens."
The evidence set forth in the finding of facts that the Council relied upon to adopt its resolution supports the exercise of their decision-making authority authorized under N.J.S.A. § 40A:16-3. Additionally, the Council has properly interpreted and applied the vacancy statute.
While the court's review of the factual determinations by a governing body is deferential, the review by the court of a governing body's legal interpretation of a statute is not so limiting. The court may, on a de novo basis, come to its own conclusion as to a "board's determination of a legal issue. The council is entitled to no particular deference since the courts are equipped to resolve issues of law." Urban v. Planning Bd. of Manasquan, 238 N.J.Super. 105, 111, 569 A.2d 275 (App. Div.1990). "Interpretation of legal issues in the particular factual contest may be performed by each board, subject to de novo review by the court." Wyzykowski v. Rizas, 254 N.J.Super. 28, 38, 603 A.2d 53 (App.Div.1992).
With regard to the factual evidence, according to the adopted finding of facts, the Council relied on the testimony of Beth Lincoln-Cole. Lincoln-Cole is an attorney and was retained by the acting Township manager, Steven Addezio, on behalf of the Township, after he had learned that plaintiff allegedly may no longer be residing in the Township. Her role was to conduct an investigation by speaking with D'Alonzo whose involvement was initiated when he was contacted by Addezio as the acting manager for Medford Township. Lincoln-Cole also reviewed and relied upon a report and its conclusions of a private investigator, Harry Glemser, who Addezio also retained. In addition, Lincoln-Cole was one of those present at the closed session of the Council when plaintiff was first confronted without notice during the first attempt to remove her from her seat on the Council. Lincoln-Cole's testimony was in material part hearsay.
Lincoln-Cole's testimony as to what D'Alonzo and Addezio told her, as well as what Glemser's report concluded, was more of a summary than evidential. Lincoln-Cole's testimony was a prelude to the testimony of D'Alonzo and Glemser.
The testimony was accepted by the Council because of a ruling by special counsel who conducted the proceeding, who ruled that the rules of evidence do not apply in an administrative hearing.
Next, D'Alonzo testified that starting in August 2010, he became aware that plaintiff was living in his neighborhood. He observed her coming and going on a regular basis. He also saw her hanging a picture while he was walking his dog. He also testified that he became aware of a domestic dispute at the Fay household, sometime in July 2010, that he heard about during a roll call at the police station.
Finally, Glemser testified that he is a private investigator, and that he was retained by Addezio on January 24, 2011. He was asked by Addezio to "conduct a *373 surveillance on one of the Council members who he had information may possibly not be living in Medford Township." He was paid $100 per hour to be capped at $1500.
As part of his surveillance, Glemser learned that plaintiff was living at the Marlton address. In addition he contacted a neighbor under a ruse, and learned that there was single female living at the premises he had under his surveillance. Eventually, he saw the woman he believed was plaintiff. At one point he saw plaintiff with a young boy, which he concluded was her son. Glemser followed plaintiff to a business in Medford. He also observed a mail truck in the area, but could not determine if plaintiff received any mail. He testified that he also took video and still photos. On cross-examination Glemser confirmed that Lawrence Fay was listed as the owner of the Evesham unit.
His entire effort took place over two days in January. On this effort he concluded that plaintiff was residing at the Evesham unit.
None of the witnesses who testified for the Council to investigate this issue asked plaintiff to explain the situation nor did plaintiff make any effort to inform the Council of her situation.
The testimony of just these witnesses alone would not have supported the Council's ultimate findings, even giving the Council its legal presumption of reasonableness. However, when coupled with the testimony of plaintiff herself, the conclusion by the Council that plaintiff was no longer domiciled at her former marital residence or anywhere else in the Township was appropriate and certainly not reversible through the prism of the arbitrary, capricious, or unreasonable standard through which the court is obligated to view the case.
At the hearing, plaintiff did not dispute the fact that she was residing in Evesham. She stated that she began living in Evesham in November as opposed to August. She testified that her residence in Evesham was temporary due to a breakdown of her marriage.
Plaintiff testified that 11 Atkinson Court, Medford, was her marital home, where she and her family have resided for seventeen years. She and/or her husband have property interests in several other locations, including 11 South Main Street, Medford, as well as Cape May, Ocean City, Marlton, and Naples, Florida. It is to the Marlton property to which she relocated.
Plaintiff stated that while she had offers to move in with friends who live in Medford, she did not want to inconvenience them because she had her son.
She said she moved to that unit temporarily because it was paid for and she would not have to pay a mortgage or rent. She said that the cable and electric to the unit were all in her husband's name. She did admit painting the unit and purchasing furniture.
Through her direct testimony and cross-examination, plaintiff insisted that her relocation was temporary and that she was intending to return to Medford. Much of the testimony centered on the divorce. However, in her testimony she could not say with any certainty when she would return to Medford, or where her domicile would be. This was born out as plaintiff was questioned about her earlier representations made to the court in her pleadings that she was going to move back to Medford over time periods which were ultimately not met by her.[3]
*374 The application of those facts found by the Council is coupled with a reasonable interpretation of the statutory law given the unique set of circumstances this case presents. The findings of the Council, given the deference such findings are required to be given, adequately support the conclusion that plaintiff no longer is domiciled in Medford Township.
While the potential factual scenarios are unlimited, the law of what constitutes one's domicile has been settled for many years in New Jersey.
Domicile has been variously defined as the place where a person has his true, fixed permanent home, and principal establishment, and to which, whenever he [she]is absent, he[she] has the intention of returning, or the habitation fixed in any place, without any present intention of removing there from.
[State v. Benny, 20 N.J. 238, 250, 119 A.2d 155 (1955) (citations omitted).]
Most recently in an unpublished but related opinion our appellate court has addressed the issue of domicile in relation to the qualification of an individual to be eligible for an elective office. The court discussed the issue and affirmed the determination of the Secretary of State in her ruling that the plaintiff was not a resident. In its opinion, the court held that it is the intent to make one's place his or her "home," as demonstrated by the relevant factors that controls a determination of residency for purposes of qualification. Layton v. Lewis, No. A-4047-10, (App.Div. May 2, 2011) (slip op. at 12), 2011 WL 1632039 (emphasis added).
A review of the recent cases on the issue of domicile are generally cases related to election matters. The Lewis case is an election case and even while construing domicile "broadly and flexibly," the Appellate Division affirmed the Secretary of State. The court recognized the "standard of proof of domicile in election matters, a preponderance of the evidence, is more lenient than might apply elsewhere and is subject to the minimal constraints necessary to prevent fraud." Id. at 13-14.
The instant case is not an election case. Election cases most often focus on an individual's franchise or the individual's right to run for office where the residency statutes are at issue, and thus deserve a broader and flexible treatment as was pointed out by the court in Lewis.
A case such as this under the Municipal Vacancy Law is focused primarily on the continuity of governance, to ensure that the governing body has a mechanism to determine when a vacancy occurs and filling those vacancies as efficiently as possible. Thus, a more lenient consideration of the domicile and residency issue in this setting is not warranted because of the obvious intent of the Legislature to ensure the orderly continuance of a governing body's responsibility to act in the public interest, as well as to ensure that elected officials are actually residing within the corporate boundaries where they were elected to govern. See Senate County and Municipal Government Committee, Statement to S.1217 (January 22, 1979).
Undoubtedly, during a divorce proceeding, the issue of determining where the respective spouses ultimately create their domicile is an issue that may lead to uncertainty for extensive periods of time. In this case, the findings of the Council show plaintiff made a conscious decision to vacate *375 her marital home, which was subsequently confirmed in the Family Division. She has moved to Evesham, and has been there since November 2010. She has expressed an intent to return, but did not factually demonstrate the recognized elements of domicile at the hearing to the satisfaction of the Council.
In addition, she cannot return to what was her domicile at the marital home by court order, so she has no present domicile within the corporate limits of Medford Township. Furthermore, at the time of the hearing, she admitted she could not return to the marital home and that she was residing in Evesham. In reviewing the record from the remand hearing, the Council's determination that plaintiff was no longer a resident of Medford Township was not arbitrary, capricious and unreasonable, and thus the court is not permitted to substitute its judgment in place of that of the Council's.
In conclusion, the Legislature gave the governing body significant power to make the determination as to whether a member no longer resides in the Township. That power must be exercised carefully and balanced. If the power is based on too restrictive and inflexible of an interpretation of the residency provision of the statute, which fails to recognize the possibility of the multitude of legitimate circumstances where use of a second residence outside of the corporate limits can be temporary, whether because of a justified reason or necessity, then the possibility of mischief may assert itself. However, to the contrary, that power must not be applied overly broad or overly flexible so that individuals who are not domiciled within the corporate limits could maintain their seat on a governing body when it is legally not supportable, thus frustrating the intent of the statute.
In this case, the findings of the Council and its resolution have addressed that balance. Plaintiff vacated the marital home. She has not resided in the Township for many months, and at the time of the hearing could not say with any certainty when she would return and where she would make her domicile. It cannot be said, based on the record below, that plaintiff has provided any evidence to counter the Township's contention that she does not have a place to return to in Medford that is a true, fixed, permanent home, and principal establishment, and to which she can return whenever she is absent. State v. Benny, supra, 20 N.J. at 250, 119 A.2d 155.
While plaintiff certainly cannot be faulted for doing what she believed was in the best interests for herself and her family, she made a choice as difficult as it was. This choice has had unintended consequences; nevertheless, those personal choices cannot trump her statutory obligation as a Township Council member to remain domiciled in Medford Township. The Council exercised its responsibility under the Municipal Vacancy statute, and the record of their actions on remand shows that they exercised their authority appropriately.
Under the legal standards set forth above, the action of the Medford Township Council in vacating the seat held by plaintiff is affirmed.

CONCLUSION
For the reasons set forth above, the court hereby affirms the action taken by the Medford Township Council and dismisses the counts in plaintiff's complaint comprising her action in lieu of prerogative writs. The remaining counts of plaintiff's complaint will be transferred to the Law Division.
NOTES
[1] It is unclear why there was a need to amend the complaint since the original complaint essentially sought a declaratory determination.
[2] Plaintiff has been represented by three different attorneys. Her initial counsel Christopher Costello, who filed the original complaint, a second counsel, Joseph Carmen, who was her matrimonial lawyer represented her at the Township hearing on remand, and her current counsel Holly Fusco, represents her in the current proceeding.
[3] In plaintiff counsel's letter brief of April 20, 2011 she refers to plaintiff maintaining her driver's license, voting registration, banking and insurance at the marital home. However, there was no testimony placed on the record on those subjects in the remand hearing by plaintiff or anyone else. Therefore, these assertions cannot be considered by the court as they were not part of the record below.